CASE 76—INJUNCTION—MAY 18.

# Joyes v. Jefferson County Fiscal Court, Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

FISCAL COURT OF JEFFERSON COUNTY.—HOW COMPOSED.—The fiscal court of Jefferson county is composed of the county judge and the eight justices of the peace of the county, the act of April 6, 1888, providing for commissioners having been repealed—if not by section 144 of the Constitution, certainly by the act of October 17, 1892, enacted to carry that section into effect.

MORTON JOYES IN A BRIEF AND SUPPLEMENTAL BRIEF FOR THE APPELLANT, JOYES.

1. The city of Louisville is separated by law for county governmental purposes from the remainder of Jefferson county. Sec. 2744 Ky. Stats.

2. Section 144 permits such separation, either continuing from the past or to be created in the future.

3. Section 144 of the Constitution permits the General Assembly to limit the jurisdiction of the fiscal court in a county such as Jefferson, containing a city separated, etc., to that part of the county outside of the city, and to limit the membership of such a court to the county judge and the justices from that part of the county.

4. The inhibition upon local legislation contained in section 59 of the Constitution is prospective and not retrospective. Pearce v. Mason County, 99 Ky., 357; Picot v. Police Jury, &c., 6 Southern, 677; Ex parte, Burke, 59 Cal., 6; Nevada School District v. Shoecraft, 26 Pac., 211; Allbyer v. State, 10 Ohio St., 588; State v. Barbee, 3 Ind., 258; Cooley's Con. Lim., 76, and authorities cited.

5. The local act of April 6, 1888, establishing a board of commissioners for Jefferson county is not repealed, either by Constitution or the statutes. O'Mahoney v. Bullock, 97 Ky., 774; Pearce v. Mason County, 99 Ky., 357; Nienaber v. Tarvin, 20 Ky. Law Rep., 455; Donnelley v. Carpenter, 20 Ky. Law Rep., 675; Campbell Co. v. Commissioners, 19 Ky. Law Rep., 860.

6. Such commissioners are not officers within the meaning of section 165 of the Constitution. McArthur v. Nelson, 81 Ky., 68; Goodloe v. Fox, 96 Ky., 627.

7. This board alone has authority to purchase ground for an ad-

dition to the court-house of Jefferson county, and to contract for the construction of the same. Act of April 6, 1888.

8. The fiscal court of Jefferson county consists only of the county judge and four justices outside of the city, and has no authority to levy a tax for any purpose upon property or persons within the city of Louisville. Ky. Stats., sec. 1851.

Additional citations: Piper v. Gunther, 95 Ky., 115; Con. secs. 144, 150, 165, 59, 50; Debates Constitutional Convention, vol. 4, pp. 57, 48-9; Ky. Stats., ch. 52; Acts 1879-80, vol. 1, p. 504; Cooley on Taxation, p. 113; County Judge Shelby Co. v. Shelby R. R., 5 Bush, 225; Malchus v. District of Highlands, 4 Bush, 547; State v. Barbee, 3 Ind., 258.

H. L. STONE FOR APPELLANT, CITY OF LOUISVILLE.

1. For county governmental purposes the city of Louisville is separated by law from the remainder of Jefferson county.

2. The territorial limits of the jurisdiction of the fiscal court in Jefferson county are confined to that part of the county outside of the city of Louisville.

Citations: Acts 1887-8, vol. 1, pp. 831-33; Con., secs. 144, 171; Ky. Stats., secs. 1847, 1833, 1851, 1852, 1885, 1886, 1893, 2744, 2750, 2981; Acts 1891-2-3 pp. 268-274; Ky. Stats., secs. 1833-1851; Ky. Stats., secs. 1852-1885; Debates Con. Convention, vol. 4, p. 5748; Ib., 5749; Endlich on Interpretation of Statutes, sec. 510; Com. v. Balph, 111 Pa. St., 365-80; Acts 1853-4, vol. 1, p. 61; Acts 1863-4, p. 23; Acts 1865, vol. 1, p. 270; Burnett's City Code, title "County Relations," sec. 3, p. 175; Ib., secs. 9, 10, 11, 12; Acts 1889-90, vol. 1, secs. 1, 2, p. 448; Donnelly, Tax Collector v. Carpenter, &c., 20 Ky. Law Rep., 675.

JACOB SOLLINGER FOR SAME APPELLANT.

1. The proviso, "But where, for county governmental purposes, a city is by law separated from the remainder of the county, such commissioners may be elected from the part of the county outside of such city," in section 144 of the Constitution, contemplates and applies to fiscal courts, whether they be constituted of magistrates or commissioners, and is prospective in its operation.

2. Section 1851 of the Kentucky Statutes is in harmony with, and within the spirit of section 144 of the Kentucky Constitution, and is valid.

3. The city of Louisville is now, and has been for years prior to the adoption of the present Constitution, separated by law from the remainder of Jefferson county for county governmental purposes. Burnett's City Code, 174-179; Ky. Stats., sec. 2744.

Joyes v. .Jefferson County Fiscal Court, &c.

4. The jurisdiction of the fiscal court of Jefferson county does not extend over the city of Luisville. Ky. Con., sec. 144; Ky. Stats., secs. 1833 to 1851.

Additional citations: Ky. Con., secs. 142, 99; Debates Con. Convention, vol. 4, 5749; Cooley's Con. Lim. (2d ed.), 63; Cooley's Con. Lim. (6th ed.), 216, 217; Green, &c., v. Com., 95 Ky., 233.

HUMPHREY & DAVIE FOR APPELLEES.

1. The "Board of County Commissioners" for Jefferson county, created under the act of 1888, was necessarily superseded by the subsequent provisions of the new Constitution and the Kentucky Statutes; which created a fiscal court to perform the same duties formerly required of that board of commissioners. Con. sec. 144; Ky. Stats., chap. on fiscal courts; Black on Interpretation of Laws, p. 114; Endlich on Interpretation of Statutes, secs. 200, 201; N. Canal Co. case, 10 Watts, 351; Springfield v. Com., 6 Pickering, 501; Hatfield's case, 4 Yeates, 392; N. London v. Boston Railroad, 102 Mass., 388; Korah v. Ottawa, 32 Ill., 121; Gorham v. Luckett, 6 B. M., 154; Comrs. of Sinking Fund v. Grainger, 98 Ky., 324; Brown v. Com., 98 Ky., 652; McTigue v. Com., 99 Ky., 72; Broaddus v. Broaddus, 10 Bush, 299; Parrish v. Ferguson, 83 Ky., 19; Long, Treasurer, v. Stone, 19 Ky. Law Rep., 246.

2. That board of commissioners of 1888 was expressly repealed by the Kentucky Statutes.   (Sec. 1833.)

3. That board of 1888 was also repealed by the schedule to the Constitution, which declared that all provisions of all laws inconsistent with the Constitution shall cease, either upon its adoption, or six years after its adoption; and the existence of that board of commissioners of 1888, consisting of two aldermen, three councilmen and two magistrates, was entirely inconsistent with the Constitution, which requires each county to have a fiscal court, composed of an entirely different body of men.

4. The Kentucky Statutes (sec. 927) provided for the fiscal court buying lands, building courthouses, jails, etc. Section 1840 provided for the fiscal court furnishing courthouses, etc., managing the fiscal affairs of the county, and the levying of taxes, and other provisions gave to the fiscal court all the powers formerly given to the county and levy courts and board of commissioners of different counties; and, therefore, the fiscal court necessarily superseded those earlier bodies.

5. A board of commissioners, composed of three councilmen, two aldermen and two magistrates, is directly in the teeth of the Constitution (sec. 144), which entrusts the fiscal affairs of the

Joyes v. Jefferson County Fiscal Court, &c.

county to a fiscal court, to be composed of the county judge and all the magistrates, or of the county judge and three elected commissioners. The provision in the Constitution for such·a court to attend to the fiscal affairs, excludes the Legislature from entrusting any other body with those duties. Perkins v. Auditor, 79 Ky., 306; Com. v. Williams, 79 Ky., 42; Lowe v. Com., 3 Met., 241.

6. The board of county commissioners, under the act of 1888, violates the Constitution, because it requires city officials to also be county officials, which is incompatible. A city officer can not be a county officer under the new Constitution and laws. Con., sec. 165; Ky. Stats., secs. 3746, 2768.

7. The city attorney's contention, that a fiscal court shall consist of the county judge and half the magistrates (those outside of the city), is directly in the teeth of the Constitution, which does not authorize any such formation of the fiscal court. (Con., sec. 144.)

8. The provision of the Constitution authorizing three commissioners to be elected outside of the city, where the city and county are divided into two county governments, is not applicable to Jefferson county, because that county has never voted to adopt the "three commissioners" system, and also because the Kentucky Statutes have not created two county governments, two county courthouses, two county jails, etc., in this court. Constitutional Debates, vol. 4, p. 5749; Ky. Stats., sec. 1847.

9. The lawful form of the fiscal court for Jefferson county, at the present time, consists of the county judge, and all of the eight magistrates, including those in the city and those in the county. The appellants are, therefore, the lawful fiscal court of the county.

EDWARD J. McDERMOTT on the same side.

1. The act of 1888 is repealed.
2. Under section 144 of the Constitution there must be a fiscal court in every county, and whether it is composed of all the magistrates and the county judge, or of three commissioners, it must still be known as the fiscal court, and these commissioners must be elected by the people.

Citations: Ky. Con., secs. 144, 165; Schedule, sec. 1, Ky. Stats., secs. 1833, 1840; Broaddus v. Broaddus, 10 Bush, 299; Beard v. City of Hopkinsville, 95 Ky., 239; O'Mahoney v. Bullock, 97 Ky., 774; McTigue v. Com., 99 Ky., 66; Pearce v. Mason County, 99 Ky., 365; Long v. Stone, 19 Ky. Law Rep., 246; Long v. Com., 18 Ky. Law Rep., 176; Ky. Stats., secs. 2768, 2779, 3746, 1839. 927; City of Louisville v. Wilson, 99 Ky., 604; Constitutional

Debates, pp. 5748, 5749, 5949; Williams v. Com., 79 Ky., 42; Hoffman v. Trustees, 18 Ky. Law Rep., 302; Wolfe v. McHargue, 88 Ky., 251.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment of the Jefferson Circuit Court, Chancery division, adjudging that the county judge and all the justices of the peace in Jefferson county constitute the fiscal court of said county. The opinion of the trial judge contains such a clear statement of the matters involved and the reasons for the conclusions reached that we copy from said opinion as follows:

"The question to be determined, therefore, is, what persons constitute the fiscal court of Jefferson county? In tracing the history of the legislation concerning the county in this respect, it is unnecessary to go back of the act of April 6, 1888, as amended by the act of April 9, 1890. By the act as amended there was erected a Board of County Commissioners for Jefferson county, which consisted of the two justices of the peace elected as such commissioners by their associates in Jefferson county outside of the city of Louisville, of two aldermen of the city of Louisville elected as such commissioners by the Board of Aldermen of the city of Louisville, and of three councilmen of the city of Louisville elected as such commissioners by the Board of Council of said city, presided over by the county judge. This board, consisting of seven members besides the county judge, transacted the fiscal affairs of the county up to within a short time ago. It is now claimed by the plaintiff that this Board of Commissioners is still in existence. The defendants claim that the act of 1888 is repealed, and that the fiscal affairs of the county are now in the hands of the fiscal court, consisting of the judge of the county court and the justices of the peace of the county, as provided by section 144 of the Constitution.

"The city of Louisville has also filed its answer in this case, in which it has joined in the prayer of the petition. It is hardly necessary to go into the different claims of the parties in detail, as I deem it sufficient to treat the question as a single question, without stating more particularly the claims of the different parties.

"Section 144 of the Constitution provides as follows:

" 'Counties shall have a fiscal court, which may consist of the judge of the county court and the justices of the peace, in which court the judge of the county court shall preside, if present; or a county may have three commissioners, to be elected from the county at large, who, together with the judge of the county court, shall constitute the fiscal court. A majority of the members of said court shall constitute a court for the transaction of business. But where, for county governmental purposes, a city is by law separated from the remainder of the county, such commissioners may be elected from the part of the county outside of such city.'

"The county of Jefferson has never adopted the alternative plan of commissioners provided by section 144. The fiscal court, as contemplated by the Constitution, consists of a body of men elected in the first place by the people, but who are not selected as commissioners by the people. If the act of 1888 is in force, the question is at once settled. If, however, it is not in force, there are other questions to be determined.

"I do not see how it can be reasonably contended, however, that the act of 1888 is now in force. In the first place, I deem it inconsistent with section 144 of the Constitution, which is paramount upon all subjects therein treated. That section expressly says that the county shall have a fiscal court, and goes further by saying what per-

sons shall constitute that court. It will be noticed that the Constitution takes up the questions of courts in detail. Beginning with section 109, we have the general heading relating to the judicial department; section 110 takes up the subject of the Court of Appeals; section 125, that of the Circuit Courts; section 139, that of Quarterly Courts; section 140, that of County Courts; section 142, that of Justices' Courts; section 143, that of Police Courts; section 144 treats of Fiscal Courts. By the act of October 17, 1892 (Kentucky Statutes, section 1833), the Legislature passed a comprehensive act relating to fiscal courts. That section expressly provides that each county in the Commonwealth shall have a fiscal court, which shall consist of the judge of the county court and the justices of the peace of said county and their successors in office, in which court the judge of the county shall preside, if present. That act contains this provision:

" 'That where the fiscal court of any county is composed of commissioners under a special act, said special act shall continue in force until the first Monday in January, one thousand eight hundred and ninety-five, after which the fiscal court of said county or counties shall be constituted and composed of the judge of the county court and the justices of the peace and their successors in office.'

"It is a well-settled rule of construction in Kentucky that, where there has been a revision of a statute law upon a given subject, it will be regarded as containing all the statute law upon that subject, and as repealing any of the statutory provisions on the subject omitted from the new revision. Broaddus v. Broaddus' Heirs, 10 Bush, 109; Long, Treasurer, v. Stone, Auditor, 19 Ky. Law Rep., 246 [39 S. W., 836].

"Now the Legislature has here taken up the regulation of the county fiscal management, and has enacted a com-

plete chapter on the subject, which is now the chapter on fiscal courts in the Kentucky Statutes; and under the principles laid down in the foregoing authorities I do not see how the conclusion can be avoided that this new statute must be construed and intended to supersede the previous statutes in regard to the fiscal management of county affairs. This belief is strengthened when we consider section 144 of the Constitution in connection with the act of 1892, and the concluding provision of said act, which limits the existence of the old fiscal courts of the county then existing under special acts. Furthermore, under section 1 of the schedule of the present Constitution it is expressly provided that the provisions of all laws which are inconsistent with this Constitution shall cease upon its adoption, except that such laws as are inconsistent with the provisions of the Constitution as require legislation to enforce them shall remain in force until such legislation is had, but in no event for a longer period than six years after the adoption of the Constitution, unless sooner amended or repealed in General Assembly.

"The Constitution was adopted September 28, 1891. The limitation, therefore, expires September 28, 1897. So that the conclusion seems inevitable that in any event the Board of County Commissioners, as it existed under the act of 1888, stands repealed, because it is inconsistent with the constitutional idea of a fiscal court, and the Legislature has passed the act of 1892, reiterating that idea, and carrying out the provisions of the schedule above referred to.

"Referring again to the act of 1892 (section 1834 of the Kentucky Statutes), it is expressly provided that, 'unless otherwise provided by law, the corporate powers of the several counties in this State shall be exercised by the

fiscal courts thereof respectively.' Now, it has been contended that the Board of Commissioners, under the act of 1888, is a fiscal court, within the meaning of the act of 1892; but that contention does not seem sound to me, for the reason that section 1833, the opening section of the act of 1892, practically defines the fiscal court as being a body consisting of the judge of the county court and the justices of the peace of the county. Section 927 of the Kentucky Statutes expressly provides that the fiscal courts of the several counties are empowered to buy land, when the same is necessary, for the purpose of erecting thereon public buildings, such as court houses, clerks' offices, jails, and work houses. Here is a special authorization of the purchase of property to build a court house, and to do the very things which, before the new Constitution, would have to be done by the Board of County Commissioners under the act of 1888.

"Section 1840 provides that 'this fiscal court shall have jurisdiction to appropriate county funds authorized by law to be appropriated; to erect and keep in repair public buildings; to secure a sufficient jail, and a convenient and comfortable place for holding court at a county seat; to erect and keep in repair bridges and other public structures; to regulate and control the fiscal affairs of the property of the county; to make provisions for maintenance of the poor; to provide a poor house and farm; to execute all of its orders consistent with law and within its jurisdiction, and to have jurisdiction of all such matters relating to the levying of taxes as is, by a special act, now conferred on the county court and courts of levy and claims.' It certainly was the intention of the Legislature, in making these broad provisions, to make a change in the condition of affairs that existed under the act of 1888. The only

question·really to be considered is, what persons consti-
tute this fiscal court contemplated by the statute? I have
no doubt that the Constitution and the act of 1892 both
contemplated, certainly after September 28, 1897, a change
in the management of the county fiscal affairs. Louisville
& N. R. R. Co. v. Pendleton Co., 96 Ky., 491 [29 S. W., 324].

"Substantially all of the powers that were vested in the
Board of Commissioners under the act of 1888 are now
vested in the statutory fiscal court, and that is necessarily
implied, if implication, however, is necessary, as the provi-
sion in section 1833 of the Kentucky Statutes expressly
limits the life of all such special bodies to the first Mon-
day in January, 1895.

"It is contended, however, on behalf of the city, that
under section 144 of the Constitution, and other sections of
the Kentucky Statutes, if there is a fiscal court, it is to
consist. of the county judge and the four justices of the
peace who live in Jefferson county outside of the. city of
Louisville. This argument is based upon the final clause
of said section 144, which provides as follows: 'Where,
for county governmental purposes, a city is by law separ-
ated from the remainder of the county, such commission-
ers may be elected from the part of the county outside of
said city.' Section 1851, Kentucky Statutes, provides as
follows: 'Where, for county governmental purposes, a city
is by law separated from the remainder of the county, that
portion of the county outside of the limits of said city
shall be deemed the county, within the meaning of this
act.' It is argued on behalf of the city that, under this
section of the Constitution and the Kentucky Statutes, we
would have a fiscal court composed of the county judge and
the four justices of the peace located in the county, who
would be authorized to levy tax upon the property within

the city of Louisville, and that the city would thus be subjected to a tax which it had not the power to control or levy, and that it would not be represented in such levy. The difficulty in this contention, however, is that it implies the power of the Legislature to change by construction the possible meaning of the Constitution. The Constitution nowhere limits the meaning of the term 'county' as the statute attempts to limit it. Under the contention of the city, there is no common board, composed of a representative of the city and county, which can levy a tax for the common benefit of the city and county. The trouble seems to arise from the last clause of section 144 of the Constitution, above quoted. As originally reported, section 144, *supra*, did not contain the last clause above quoted. The history of the insertion of that clause is found on page 5748 of the Constitutional Debates. When the section was read as altered, the question was raised as to what it meant. Whereupon Senator Goebel, of Kenton county, said: 'That was presented by me in the committee, and was adopted for this reason: In the county of Kenton, the city of Covington is wholly separated by law from the remainder of the county with reference to the county government. We have two county seats, and the part of the county outside of the city is as separate from the city as if we were two counties. The city of Covington pays for maintaining its court house and jail, and the part of the county outside of Covington is conducted by three commissioners, elected on the part of the county outside of Covington. If the section is adopted as originally presented, the city of Covington would vote in the election for the county commissioners to control the affairs of the county outside of Covington, in which the city has no interest whatever, and to which it pays not one cent.' Mr.

[40]

Miller, of Lincoln county, thereupon took exceptions to the proposed change, and its possible effect, in the following language: 'They may be willing to tolerate it in Covington, but I am not willing to tolerate it. There may be reasons for it in Kenton, but there is no reason for it in the balance of the State. If the amendment prevails, there is a recognition of the principle and power to separate counties into divisions for the purpose of managing the fiscal affairs of the county. In other words, instead of having the whole fiscal affairs of the county managed under one head, you may separate them, and have that portion of the county which lies in the limits of the city managed in a way different from the outlying districts. That is a material change in the Constitution, and I do not see any reason why every portion of the fiscal affairs of the county should not come under the same management. . . . I do not want it to even be permissive. I do not want the Legislature authorized to do this—if this amendment is adopted, I hope it will be made applicable to Kenton county alone.' Whereupon Mr. Goebel answered: 'If you have not a separation of your county now, it will not apply to your county.' Thereupon the controversy ended, and, although Mr. Miller had aptly stated what he conceived to be the effect of the amendment, which is substantially the argument made in this case, still the convention seems to have adopted Mr. Goebel's explanation as the true meaning of the section as amended, and that it would not apply to any county except Kenton, or a county organized as Kenton county was organized."

It is earnestly insisted for appellants that section 2744, Kentucky Statutes, which reads as follows: "For county governmental purposes a city of the first class is hereby separated from the remainder of the county in which such

city is situated.  The general council shall provide by or-
dinance suitable appropriations for the purpose of paying
such city's portion of all expenses common to both such
city and county," separated the city of Louisville from the
balance of Jefferson county, for governmental purposes,
and devolved upon the city council the power and duty to
provide for paying the city's portion of all expenses com-
mon to both city and county; and it is also insisted that
such separation is authorized by the latter clause of sec-
tion 144 of the Constitution, quoted in the opinion, *supra*.
We do not think that said section can have the effect
contended for, even if such separation was authorized by
the latter clause of section 144, *supra*.

We have read with care the very able briefs discussing
the true meaning of section 144, and we are of opinion
that the latter clause of said section was intended by the
framers of the Constitution to apply to such counties only
as has two county seats, and in which the city was in
reality separated from the balance of the county for
county governmental purposes.  If at the time any county
had in fact two county seats, and the city was separated
from the balance of the county, as indicated in said sec-
tion, the clause under consideration would apply to such
counties.  We, however, deem it unnecessary to now de-
termine whether or not there was in reality any county in
the condition described in the latter clause of the section,
*supra*.  But, be that as it may, we are clearly of the opin-
ion that the city of Louisville was not so separated from
the residue of Jefferson county.  We are further of the
opinion that the section relied on does not authorize the
Legislature to so separate any city from the residue of
the county.  The mere fact that at the time of the adop-
tion of the Constitution there was a statute providing for

the levy and collection of a portion of the county taxes by city authority, and another portion by the county authorities outside of the city, did not constitute a separation of the city, from the county for county governmental purposes. It results from the foregoing, that we are of the opinion that the fiscal court of Jefferson county is composed of the county judge and the eight justices of the peace of Jefferson county.

The judgment appealed from is therefore affirmed.

The whole court sitting.