Richardson, &c. v. Boske, Sheriff, &c. and Wilson, &c. v. Same.

---

CASE 100—ACTION FOR INJUNCTION AGAINST SHERIFF TO PREVENT COL-
LECTION OF TAXES ALLEGED TO BE ILLEGAL—OCT. 31.

# Richardson, &c. v. Boske, Sheriff, &c.
# Wilson, &c. v. Same.

### APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL.    REVERSED.

COUNTIES—SEPARATION OF CITY FROM COUNTY FOR GOVERNMENTAL
PURPOSES—TAXATION OF CITY PROPERTY FOR GENERAL COUNTY
EXPENSES—FISCAL COURT.

Held:    1. Kentucky Statutes, secs. 1833-1851, defining and pre-
scribing the powers and duties of fiscal courts, which provide
that when, for county governmental purposes, a city is by law
separated from the residue of the county, "the city and county
shall each pay its proportionate part of all expenses common
to both said city and county, to be based upon the value of the
taxable property in each as shown by the last preceding as-
sessment for State purposes," operated to repeal all special
acts inconsistent therewith; and therefore the city of Coving-

ton, even if it was, by the various special acts of the Legislature for its benefit prior to that statute, separated from the residue of Kenton county for county governmental purposes, must, without regard to the provisions of those acts, pay its proportionate part of all county expenses common to both county and city, such as the salaries of county officers, cost of maintaining and providing suitable buildings for county purposes, wherever located, cost of holding elections for State and county officers, and cost of maintaining the public roads and bridges of the county.

2. The fiscal court, consisting of the county judge and all the magistrates of the county, both inside and outside the city, must provide for their payment by levying a tax on all the property in the county subject to taxation, whether inside or outside the city.

SIMRALL & ARTHUR FOR APPELLANTS.

ROBERT C. SIMMONS AND M. T. SHIVE FOR APPELLEES.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

As the determination of the legal questions presented in these cases involves the consideration of the same facts and the same constitutional and statutory provisions, they are by agreement heard together. In the petition of Margaret Richardson and others against John Boske, sheriff, and others, the plaintiffs say that they are citizens of Kenton county, residing outside of the corporate limits of the city of Covington; that certain magistrates of Kenton county, residing outside of the city of Covington, assuming to be the fiscal court of Kenton county, have levied on the property located in the county, outside of the limits of the city of Covington, for the year 1899, a tax of fifteen cents on each $100 of the assessed value of such property, for the purpose of paying the salaries of the county officers and other county expenses common to the entire county of Kenton, including the

city of Covington, and that their property is burdened
with an assessment grossly in excess of their just and legal
proportion, and that the city of Covington and all prop-
erty located therein was justly liable for its ratable pro-
portion of the taxes; that the assessed valuation of the
property in the county of Kenton outside of the city of
Covington is about $7,000,000, and the assessed value of
the property within the city of Covington is about
$24,000,000; that the "justices of the peace" residing in
the city of Covington did not act as members of the fiscal
court of the county, or take any part in the deliberation
of that body; that it is exclusively composed of the "jus-
tices of the peace in the county, who are elected and
reside outside of the city of Covington."    They charge
that the tax complained of was levied by an illegally con-
stituted fiscal court, and is therefore void, and ask that
a mandatory injunction issue, requiring the justices of
the peace in the county of Kenton to levy and assess upon
the entire county of Kenton a tax which will be sufficient
to defray the expenses incurred by the county, for which
the special levy against their property was made; and that
the sheriff be perpetually enjoined and restrained from
collecting same.    In the suit of C. R. Wilson and others
against John Boske and others, it is alleged by the plain-
tiffs that they are citizens and owners of real estate in
Kenton county outside of the city of Covington, and that
for the year 1899 there has been levied against their
property by the fiscal court of Kenton county an *ad
valorem* tax of eighteen cents upon each $100 of the value
of such property for the repair of roads and bridges in
said county; that no part of the property of the citizens
of Kenton county residing within the corporate limits of
the city of Covington is subjected to the payment of

Richardson, &c. v. Boske, Sheriff, &c. and Wilson, &c. v. Same.

any part of this tax, although the assessed value of such property is more than three-fourths of the entire assessment of the county.    It is further alleged that the fiscal court of Kenton county, which levied the tax of eighteen cents complained of, was composed of only the county judge and the justices of the peace of Kenton county, who were elected and reside outside of the city of Covington; that the justices of the peace in the city of Covington were excluded from participation in the deliberations of the alleged court in levying the tax; and it is claimed that the composition of the court was illegal, and without authority in law to levy the tax, and ask an injunction restraining the sheriff from the collection thereof.    The defendants, for answer in the Richardson case, say that the tax of fifteen cents on each $100 of property is known as a "special county tax," and was levied for the purpose of paying the expenses of the county outside of the limits of Covington; that at the time of the making of the levy the city of Covington was, and had been for many years, by law separated from the remainder of the county for county governmental purposes; that the city paid its proportionate share of the salaries of the various county officers, and provided for and maintained its own public county buildings, and all other expenses  arising  within its territorial limits, ordinarily borne by the county gov ernment, including the cost of prosecuting criminal charges where the offense was committed within the city limits; that it maintained its own poor; and that its separation existed by virtue of various special acts passed by the General Assembly, which exonerated it from the payment of any part of the taxes for which the levy was made.    And in the Wilson case the defendants denied that they were liable for any part of the eighteen cents

levied for the maintenance of the roads and bridges of
the county; that this tax is levied by virtue of section
4307 of the Kentucky Statutes to maintain and repair
the public roads and bridges outside of Covington, which
consisted of turnpikes constructed under the act of 1890,
as well as other turnpikes constructed under previous
laws, and also of the public roads in the county, commonly
known as "dirt roads," and the bridges thereon; and that
by virtue of the various acts of the Legislature relied on
in the answer filed in the Richardson case the city had
been separated from the remainder of the county of Ken-
ton for governmental purposes; and that under these acts
they were not liable for any part of the taxes sought to be
enjoined.

It is agreed by the parties hereto that there are seven
magistrates in the county of Kenton, five of whom reside
outside of the city of Covington, who, with the county
judge, constitute the fiscal court that made the levy com-
plained of; that Independence is the county seat of Ken-
ton county, and that in this town there are located the
court house, jail and clerk's office, which are maintain-
ed by taxation on the property in the county outside of
Covington; that three terms of the Kenton circuit court
are held at Independence; and that the salaries of the
county treasurer, county superintendent of schools, the
county poor house, county judge, and county attorney, all
election expenses for elections held in the county outside
of Covington, and the fees of the jailer for keeping pris-
oners committed for infractions of the State law where
the offense was committed in the county outside of the city
of Covington, are paid out of the special fund for which
the tax was levied.    It is also agreed that the city of Cov-

ington maintains a court house and officers for the use of the various county officers required by law to transact business in the city; that it pays a part of the salaries of the county judge and county attorney, and maintains its own paupers; that, if the special county tax of fifteen cents was levied upon all the property of the county, it would have raised a sum greatly in excess of the needs of the fiscal court for the purpose it was levied, and the same is also true of the road and bridge tax.

It seems to us clear from these agreed facts that the property of the citizens of Kenton county outside of the city of Covington is burdened with taxes greatly in excess of what would be their fair proportion if all the property of the county was required to pay its fair proportion of the mount necessary for the purposes for which these taxes are levied, and, it therefore becomes important to examine the grounds upon which the city of Covington claims exemption from liability for the payment of any part of the taxes sought to be enjoined in these proceedings. This contention seems to rest exclusively upon a series of special acts passed for the benefit of the city of Covington, which began on the 29th day of February, 1836, before the separation of Kenton and Campbell counties. At that date an amendment to the original charter of the city of Covington was passed, and in the eighth section it was provided that after the first day of November, 1836, the citizens of Covington should be exempt from the assessment of the county levy and all charges for roads or other purposes. Acts 1835-36, p. 415. This was followed by an act of February, 1842, to amend the road law in Kenton, by which the county court was directed to divide the county into suitable road districts, and to maintain them the citizens were subjected to a

road tax of six cents on each $100 of taxable property, and a poll tax of $1.50. This act also exempted the citizens of Covington from the payment of any of the tax provided for. In 1856 an act was passed providing that the justices of the peace of Kenton county, who resided in the city of Covington, should not be permitted to sit in the court of claims in the county of Kenton. And in February, 1858, an act establishing a county court in the city of Covington was passed. The last section of the act provided that "the city of Covington should pay the presiding judge of the county court such reasonable sum for his services, in holding said courts, as the city council might annually determine. And all other expenses for holding said court in Covington, which otherwise would be paid out of the county levy, should be paid by the city of Covington." 1 Acts 1857-58, p. 42. Numerous acts along this line continued to be passed until by an act of the 18th of March, 1886, it was provided that 'all expenses and costs, of every character and kind, growing out of county or municipal government, which are now or have been payable out of the county levy, which originates in the city of Covington, in the county of Kenton, shall be paid by the city of Covington, and all expenses, of every character and kind, which originate in the county of Kenton, outside of the city of Covington, shall not be paid by the city of Covington: provided, that the allowances to county officers for services rendered as such for the county of Kenton, that the city of Covington shall only pay its proportionate part of the allowance." 1 Acts 1885-86, p. 899. Section 144 of the Constitution provides: "Counties shall have a fiscal court, which may consist of the judge of the county court and the justices of the peace, in which court the judge of the county court

shall preside if present; or the county may have three
commissioners to be elected from the county at large,
who together with the judge of the county court shall
constitute the fiscal court.    A majority of the members
of said court shall constitute a court for the transaction
of business.    But where for county governmental pur-
poses a city is by law separated from the remainder of
the county, such commissioners may be elected from the
part of the county outside of the city." It is the
contention of appellees that this section of the Consti-
tution recognized the separation as existing at the time
of its adoption, and sanctioned its continuance. A very
similar question to the one presented in this case was
considered by this court in the case of Joyes v. Fiscal
Court, 106 Ky., 615 (21 Ky. L. R., 199), (51 S. W., 435); and it
was there held that an act of the Legislature passed in 1888,
and amended in 1890, creating a board of county commis-
sioners for Jefferson county, composed of two justices of
the peace, two aldermen, and three councilmen, to be pre-
sided over by the county judge, was repealed by the gen-
eral act of the Legislature approved in October, 1892, and
that the fiscal court of Jefferson county was properly
composed of the county judge and eight justices of the
peace of the county, and that section 2744 of the Ken-
tucky Statutes, which is a section of the charters of cities
of the first class, and which provides "that for county
governmental purposes a city of the first-class is hereby
separated from the remainder of the county in which such
city is situated, and the general council shall provide
by ordinance suitable appropriation for the purpose of
paying such city's portion of all expenses common to
both city and county," did not have the effect to oust
the fiscal court of the county of its jurisdiction to assess

and levy a tax sufficient to meet all expenses necessary for the administration of county affairs both in the city of Louisville and outside of it in the county of Jefferson.

Counsel for appellants have most forcibly argued in their brief that the various special acts of the Legislature relied on by the city as showing a separation of the city of Covington from the residue of the county of Kenton for governmental purposes could not be construed as affecting such separation; that this could only be done by a clear, distinct, and unequivocal expression of the Legislature,—such as would be required to create a new county.    In our opinion it is not necessary to the determination of the question raised upon the appeals in these two cases to decide whether the various acts relied on had the effect claimed for them by appellee or not, as, whether this be true or not, we think that there can be no doubt that in so far as they are inconsistent with or repugnant to the act of October, 1892, which is now embraced in sections 1833 to 1851, inclusive, of the Kentucky Statutes, which defines and prescribes the powers and duties of fiscal courts, they were repealed by the concluding section of the act, which expressly provides that "where for county governmental purposes a city is by law separated from the residue of the county, that part of the county outside of the limits of the city shall be deemed the county within the meaning of this act; provided, however, that both the city and county shall each pay its proportionate part of all expenses common to both said city and county, to be based upon the value of the taxable property in each as shown by the last preceding assessment for State purposes."    Under this statute, even if we admit that the separation contended

for actually existed, which we do not decide, it is clear that the city is bound to pay its proportionate part of all county expenses common to both county and city; and this proportion is based upon the valuation of the taxable property in each, as shown by the last preceding assessment for such purposes. And, if a county elects to have its affairs managed by a fiscal court, it must consist of all the magistrates of the county, including the county judge. Certainly the salaries of the county officers, cost of maintaining and providing suitable buildings for county purposes, wherever located, and the payment of the expenses of holding election for State and county officers, are all expenses which are common to the whole county; and we think it was clearly the duty of the fiscal court of the county, consisting of the county judge and all the magistrates of the county, whether they lived inside the city or outside of it, to provide for their payment by a levy of a tax upon all the property assessed for taxation in the county, whether in or outside of Covington. We are also of the opinion that the burden of maintaining and keeping in repair the public roads and bridges of the county is an expense which should be borne by the entire county, including the city of Covington. The people of the city of Covington are as much interested in the maintenance of the public roads of the county as the people of the country. They all run into the city. They bring it trade, build up the city, and aid in increasing the value of its property, and come within the purview of the act which provides that the city shall pay its proportionate part of all county expenses common to both city and county; and it was the duty of the fiscal court of the county, composed of the county judge and all the magistrates, under section 4306 of the Kentucky Statutes,

to levy a tax upon all the property liable therefor, whieth-
er situated inside or outside the limits of the city, for
their proper maintenance.    We do not, however, decide
that the enactment of the general statute relative to pub-
lic roads and passways, which constituted chapter 110 of
the Kentucky Statutes, in any wise affected the liability
of distinct and separate portions of the county for the
building and construction of roads under special acts.

For the reasons indicated, we are of the opinion that
the injunctions asked in these actions, restraining John
Boske, as sheriff, from the collection of the taxes, should
have been granted; and the judgments are reversed, and
the causes remanded for further proceedings not inconsist-
ent with this opinion.