CASE 4—ACTION BY H. B. HUELEFELD AGAINST M. D. McINERNEY,
SHERRIFF OF KENTON COUNTY, TO ENJOIN THE COLLECTION OF
CERTAIN TAXES.—JUNE 11.

# McInerney, Sheriff, v. Huelefeld.

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.—REVERSED.

COUNTIES—DIVISION INTO JUSTICES' DISTRICTS—UNFAIR APPORTION-
MENT—EFFECT—TAXATION—ENJOINING    LEVY—NECESSITY    FOR
LEVY—PURPOSES OF LEVY—ORDER RECITING SAME—GOVERNMENT
PURPOSES—SEPARATION OF CITY FROM COUNTY—ACTS OF LEGIS-
LATURE—REPEAL.

1.   The fact that the commissioners appointed to divide a county
    into justices' districts only alloted to a city in the county two
    magistrates, while five were allotted to the county outside of
    the city, notwithstanding that the city greatly exceeded the rest
    of the county in both wealth and population, was not ground
    for enjoining, at the suit of a private citizen resident in the city,
    a tax, levied by the fiscal court of the county, which is composed
    of the county judge and magistrates, where no exception was
    taken to the confirmation of the report of the commissioners,
    nor any attempt made to procure a reapportionment four years
    later, as authorized by Kentucky Statute, 1899, section 1082.
2.   So long as municipal governments make levies of taxes within
    the limits prescribed by the Constitution, courts of equity will not
    inquire into the necessity of the levy at the suit of an individual
    taxpayer.
3.   The resolution of the fiscal court of a county levying a tax of
    38 cents on the $100, which recited that it was apportioned as
    follows: "Three cents for the purpose of creating a sinking
    fund with which to purchase a poor farm and erect suitable
    buildings thereon, ten cents for the maintenance and repair of the
    public roads and bridges of the county, and twenty-five cents
    to defray the general county expenses"—specified the purposes
    of the levy with sufficient distinctness.
4.   There is nothing in the various special acts relating to the city
    of Covington to indicate an intention to separate the city from
    the county of Kenton for governmental purposes.
5.   The various special acts relating to the city of Covington were

McInerney, Sheriff, v. Huelefeld.

repealed by the general act of October, 1892, which was passed in conformity with the mandate of the Constitution requiring uniformity and prohibiting special legislation.

FRANK M. TRACY AND HERBERT JACKSON, FOR APPELLANT.

(No brief for appellant.)

W. S. PRYOR, FRANK M. TRACY AND HERBERT JACKSON, FOR APPELLEE.

The amount involved in this case is but trifling compared with the consequences that must necessarily follow in the event the injunction in this case is dissolved, or the property within the city of Covington and its owners made liable to support and maintain, in effect, both the municipality of Covington and the county of Kenton.

The taxable property outside of the city of Covington is valued at nine millions of dollars, the property within the city limits at twenty-two millions. So, with the imposition of a tax of thirty-eight cents on the $100, the burden on the taxpayers of Covington would be $77,600, and on the taxpayers of the county, $34,200. Ten cents of this tax is for roads and bridges and three cents for building an infirmary, and when the taxpayer is called on to pay his portion of the expense of the city government in addition to the taxes for the county, his income, unless he is a man of great wealth, is swept from him by the taxgatherer for the support of these two governments.

It may be regarded as a fact conceded—and if not, the history of the two governments shows it—that from the time the municipality of Covington was created up to the time of the decision rendered by this court in the case of Richardson v. Boske in the year 1891, the two governments were kept distinct and separate as far as could be, each one paying its own expenses and no clamor made by the one side or the other that the taxation was either unjust or oppressive. In the year 1836, an amendment to the original charter of the city of Covington was passed, providing that after the first day of November, 1836, the citizens of Covington should be exempt from the assessment of the county levy and all charges for roads and other purposes. The magistrates in the city of Covington were not allowed to preside in the court of claims, and act after act was passed exempting the city population from the payment of any part of the burden necessary to run the county government. In March, 1886, it was provided that "all expenses and costs of every character and kind growing out of county or municipal government, which are or have been payable out of the county levy, which originate in the city

of Covington in the county of Kenton shall be paid by the city of Covington, and all expenses of every character and kind which originate in the county of Kenton, outside of the city of Covington, shall not be paid by the city of Covington; *Provided,* That the allowance to county officers for services rendered as such for the county of Kenton, that the city of Covington shall only pay its proportionate part of the allowance."

This enactment was evidently passed by the consent of both the city and the county, and for the purpose of having a complete and perfect contract in the form of this enactment settling the rights of these parties; and in order to carry such contracts into effect, when the present Constitution was adopted section 144 provided for the election of three commissioners, who should act as a substitute for what is now termed the fiscal court, providing that where, for governmental purposes, a city is by law separated from the remainder of the county such commissioners may be elected from the part of the county outside of the city. The taxpayers of the county, recognizing the equitable adjustment of this matter, elected commissioners that it might, in good faith, carry out this agreement.

The case of Richardson v. Boske, reported in 23 R., page 1212, 111 Ky., 893, the opinion delivered by the present chief justice, seems to have been misconceived, in its effect at least, by one of the parties connected with this controversy, and is now relied on as conclusive of this case. The chief justice had before him the various acts of the Legislature on the subject, and evidently gave to the questions presented very careful consideration, and, we maintain, in no wise held that the legislative contract, by which the rights of the two governments were fully settled, had been repealed, but on the contrary was careful to say that it was not necessary for the court to pass on that question. It is now an open one, and whether the fiscal court is composed of the magistrates or the three commissioners is immaterial, the statutory contract must be observed. We perceive no reason, and none has been assigned, why the Legislature at the time these acts were passed had not the right to make provisions by which the expenses incurred by these two governments should be fairly adjusted and upon terms that would not oppress the one or the other.

It is apparent from the record before us as to the manner in which these taxes are imposed, that the city is at the mercy of the county magistrates; and with the city liable for any and all appropriations made by these magistrates, it is manifest that the burden not only will, but has already, become onerous to the taxpayer, and such as he can not discharge. In fact these taxes in controversy, or the greater portion of them, have been

levied for no particular purpose, or if for any specific purpose it has been confined, and is now to the recollection of the fiscal court that seems to have imposed the taxation. Why and for what purpose the taxes were levied does not appear, either by any written report or as a matter of record. All the magistrates know on the subject is that the taxes were levied for county purposes.

Section 1079 of the Kentucky Statutes provides: "The county judge of each county shall, in open court, on the first Monday in August, 1892, appoint three competent citizens of the county, over twenty-one years of age, and residing in different portions of the county and in different districts, as commissioners to divide the county into not less than three nor more than eight justices' districts, as nearly equal in territory and population as may be."

In following out this statute and attempting to comply with its provisions, a glaring error has been committed by these commissioners in this county, evidently upon the idea that they believed that the separation of the two governments still continued, and it was immaterial as to how the division was made, by giving to the county five magisterial districts and to the city only two. The population of the city from which the two justices came was three or four times that of the county, to which five had been assigned, and where business of a civil and penal nature was more likely to occur than in the county districts. So, as between the city and county, this heavy taxation is imposed by the minority on the majority; and while that report of division was confirmed it shows the necessity in such a state of case of spreading upon the records of the county court some evidence of the purposes for which these levies were made. In this case the purpose was not set forth by any written statement filed or made part of the county record, and the taxpayer is at a loss to know how this money raised by the levy has been expended. The evidence shows there was an increase in the levy of exceeding twenty per cent. over former years, and yet the citizen was denied the right of ascertaining why this heavy burden was placed upon him by this particular levy. Sixty thousand dollars necessary one year to pay the expenses of the two governments, and one hundred and fifteen thousand the next year, and yet the records of the county court, as well as every other court, are silent as to the expenditure and the objects of the extraordinary levy!

It results, therefore, as it seems to us, that the levy, certainly beyond the ten cents and the three cents, was absolutely void.

We can not well see why a legislative contract to which both parties assented is not as binding as any other. The rights of

McInerney, Sheriff, v. Huelefeld.

these parties had to be settled, and the Legislature was the only resort for the making of such a contract as would bind the parties, and if these various legislative provisions are disregarded and the contention of appellant prevails, there is no end to the taxation for those living within the city.

The imposition of taxes in all municipal governments within the State of Kentucky constitutes the chief cause of complaint with the citizens of the State who have property within the various municipalities. The expenses, as the court well knows, are enormous, and the municipal government is required to pay all of its officers to provide for its paupers, its public schools, with the salaries of its teachers and superintendent, and no mode of making payment but by the hand of the tax gatherer. The tax to maintain pest houses and poor houses, and to provide buildings for the court and clerk's offices, and also the jail, is as much for the benefit of the county as the city; we allude now to counties where cities are embraced within their boundaries.

The city of Covington is one of the county seats of the county of Kenton, kept up alone by the taxpayers of Covington, and when you tax him to pay four-fifths of the expenses of the county in addition to municipal taxation, he has the right to complain of this great burden, and a court of equity should interpose to see that justice is meted out to both of these litigants, and to this end it would be just and proper to require each government to live up to its legislative agreement. These acts have not been repealed. There has been no express legislation on the subject, and they have lived together so long in peace and harmony they should not be disturbed. The mere incidental benefits that may be derived by the one from the other ought not to be taken into account; but where the county attorney, or county judge, or other officer is elected by the whole people, both city and county, his salary should be paid in common; and in every other instance where direct benefits accrue and the voice of the taxpayer in both governments is heard, or can be heard, for or against.

Opinion of the court by Chief Justice Burnam—Reversing.

This action was instituted by the appellee, H. B. Huelefeld, a citizen and taxpayer of the city of Covington, against the appellant, M. D. McInerney, sheriff of Kenton county, to enjoin the collection of a tax of thirty-eight cents on each $100 of property in the county, which was levied by the fiscal court of Kenton county, composed of the coun-

ty judge and seven magistrates, five of whom reside outside of the city of Covington, and two within the city limits, at the regular meeting of the fiscal court for that purpose in April, 1902, upon three grounds:

First, because the commissioners appointed pursuant to section 1079 of the Kentucky Statutes of 1899, to divide the county into justices' districts, only allotted to the city two magistrates, while five were allotted to the county outside of the city, notwithstanding the fact that the city greatly exceeded the rest of the county both in wealth and population. It appears from the record that in 1892 the county judge of Kenton county appointed three commissioners to divide the county into magisterial districts, and that they performed this duty in strict conformity with the provisions of section 1080 of the Kentucky Statutes of 1899, and that no exceptions were made to the division as made by them, and their report was regularly confirmed by the judgment of the Kenton county court at its January term, 1893, and so far as this record shows this apportionment has never been called in question in any way. If, as contended, this apportionment of the county into magisterial districts was unjust to the city of Covington, they could have filed exceptions to the confirmation of the report, and, in addition to this remedy, section 1082 of the statutes provides that the county may be reapportioned into justices' districts at any term of the court in the same way four years after the first apportionment. As the city of Covington has not complained of this apportionment in the manner pointed out by the statute, a court of equity can not regard it as a sound contention at the suit of an individual citizen to enjoin the collection of the tax assessed against him.

The next ground complained of is that the levy made by

the fiscal court is in excess of the requirement of the county, and was not itemized in the manner required by law. Section 1839 of the statutes, which was passed in conformity with the requirements of section 157 of the Constitution, provides: "The fiscal courts shall have jurisdiction to levy each year for county purposes an ad valorem tax on all property subject to taxation within the county, whether belonging to natural persons or corporations, companies or associations, not to exceed fifty cents on each $100.00 in value thereof as assessed for State purposes." The tax complained of in this action is only for 38 cents on each $100 in value of taxable property in the county, and is therefore clearly within the limit. The law is well settled that, so long as municipal governments make levies of taxes within the limits prescribed by the Constitution, courts of equity will not undertake to inquire into the necessity of the levy at the hands of an individual taxpayer. See Mayfield Woolen Mills, etc. v. City of Mayfield, 111 Ky., 172, 22 R., 1676, 61 S. W., 43, where the question was recently and thoroughly considered by this court, and the conclusion there reached is supported by the overwhelming weight of authority on the question. See High on Injunctions (2d Ed.), section 544; Cooley on Taxation (2d Ed.), p. 372. Nor does the record sustain this contention of appellee as to the alleged excessive levy. And it does not bear out appellee's contention that the fiscal court did not specify with sufficient distinctness the purpose for which the levy was made. The resolution of the fiscal court on this point recites that 38 cents was apportioned as follows: 3 cents for the purpose of creating a sinking fund with which to purchase a poor farm and erect suitable buildings thereon, 10 cents for the maintenance and repair of the public roads and bridges of the county, and 25 cents

to defray the general county expenses. The language of the resolution is in substantial compliance with the provisions of the State revenue act, which provides that an annual tax of 50 cents on each $100 of value on all property shall be levied for the following purposes: "Twenty-two and one-half cents for the ordinary expenses of the government; twenty-two cents for the schools; five cents for the sinking fund, and one-half of one cent for the A. and M. College." In our opinion, the levy was sufficiently definite.

The third and most important ground upon which appellee assails the levy is that the city of Covington is by law separated from the balance of the county of Kenton for governmental purposes, and that in consequence thereof the fiscal court of the county had no legal power or authority to levy a tax for county purposes upon the property of citizens living within the city of Covington; and incidentally to this contention it is insisted by appellee that the decision rendered by this court in the case of Richardson v. Boske, Sheriff, etc., 111 Ky., 893, 23 R., 1209, 64 S. W., 919, should be overruled. In that case Richardson, a citizen of Kenton county, residing outside of the corporate limits of the city of Covington, sought to enjoin Boske, the then sheriff, from collecting a tax which the magistrates of the county residing outside of Covington, assuming to be the fiscal court of the county, had levied on property located in the county outside of the city of Covington for the year 1899, for county purposes, on the ground that the magistrates residing in the city of Covington did not act as members of the fiscal court, which made the levy, and that the tax was therefore levied by an illegally constituted fiscal court. The sheriff resisted the granting of the injunction upon the ground that the city of Covington was separated from the

residue of the county for governmental purposes, and was therefore not liable for any part of the tax sought to be enjoined, and that the magistrates residing within the city limits did not constitute any part of the fiscal court, and to support this contention relied upon certain special acts of the General Assembly running through a series of years, which exempted the citizens of Covington from any charge for maintaining the public roads of the county outside the city, and for other expenses for the maintenance and improvement of the county outside of the city, and are the identical acts relied on to support the contention of appellee in this proceeding. In that case it was not necessary for the court to decide whether the separation of the city of Covington from the residue of the county for governmental purpose actually existed by virtue of these acts or not, but the court did decide that in so far as they were inconsistent with or repugnant to the act of October, 1892, which is embraced in sections 1833 to 1851, inclusive, of the statutes, which define and prescribe the duties of fiscal courts, they were repealed by the concluding section of that act, and that the fiscal court consisted of the county judge and seven magistrates, and that as such they had the jurisdiction to appropriate county funds for all the purposes defined in section 1840 of the Kentucky Statutes of 1899, and to levy a sufficient tax, within the statutory limit, upon all the property within the entire county, whether located inside or outside of the city of Covington, for this purpose. The decision in the case of Richardson v. Boske, Sheriff, has been referred to and approved by this court in quite a number of cases which have since been decided. See Campbell County v. Newport & Cincinnati Bridge Co., 22 R., 2056, 66 S. W., 526; City of Covington v. Highlands District, 113 Ky., —, 24 R., 433, 68 S. W., 669; Commonwealth v. Porter,

113 Ky., 575, 24 R., 364, 68 S. W., 621, and Johnson v. Boske, 23 R., 1845, 66 S. W., 400. And that case followed the rule which had been previously announced in Campbell County v. Commissioners, etc., 19 R., 860, 42 S. W., 111, and Joyes v. Jefferson Fiscal Court, 106 Ky., 615, 21 R., 199, 51 S. W., 435. And we still adhere to the law as therein announced. In addition we will say that there is nothing in these various special acts which sustain the contention that the General Assembly intended thereby to separate the city of Covington from the county of Kenton for governmental purposes. They are in no sense contracts between the city and State. The General Assembly always had the power to repeal them when they saw fit, and did so by the general act of October, 1892, which was passed in conformity with the mandate of the Constitution requiring uniformity and prohibiting special legislation. The city of Covington maintains its separate municipal government like every other city in the Commonwealth, and in addition thereto permits the use of its city courthouse by the circuit court while it is holding its session within the city. But there is nothing to support the contention of a separation between the city and county for governmental purposes. On the contrary, the county government is administered by county officers, who are elected by the entire county, and whose jurisdiction extends over the entire county, including the city of Covington.

The General Assembly has plenary power to create counties, and it can not be doubted that, if they had intended to establish a separate county government in the city of Covington, they would have done so in a clear, explicit and unequivocal act passed for that purpose. In our opinion, the contention rests upon no substantial basis and can not be maintained.

For reasons indicated, the judgment is reversed and cause remanded, with instructions to dissolve the injunction granted by the circuit judge, and for an order dismissing plaintiff's petition, with costs, and for such other proceedings as may be necessary to carry out the views indicated in this opinion.

Petition for rehearing by appellee overruled.