JUDGE LINDSAY
delivered the opinion oe the court.
This action was instituted to surcharge and correct the accounts of W. George Anderson as trustee and guardian for Mary Anderson, now Mary Clark, and as executor of the last will of Orville M. Anderson, deceased. The settlements oi said trustee, guardian, etc., were made in the Louisville Chancery Court, he having instituted in that court an action, to which Mrs. Clark was made a defendant, praying that he be allowed to make his settlements in said court as executor, guardian, and trustee, and for that purpose that the cause should be kept open.
His accounts were from time to time referred to the master, and six several reports and settlements (the first in 1859 and the last in 1871) were made and confirmed.
The first question to be disposed of is as to the effect to be given to the action of the chancellor in confirming these settlements. It is claimed by appellee that each order of confirmation *104 is to be treated as a judgment, regularly rendered by a court of competent jurisdiction, having all the parties in interest before it, and that they can only be annulled, modified, or vacated upon some one or more of the grounds embraced in sections 579 and 421 of the Civil Code of Practice; and that, inasmuch as the judgments or orders affect only the personal estate of Mrs. Clark, they are not such as would have required the court under the old practice to reserve for her the right, after arriving at full age, to show cause against them. If this assumption be correct, then appellant’s remedy was an appeal to this court, and not an application to the chancellor for relief.
We deem it unnecessary to review the authorities bearing upon the point last stated — that is, whether or not, anterior to the adoption of the Code in cases like this, time would have been given to the infant to show cause against the various orders and judgments complained of.
Appellee’s petition shows upon its face he did not desire that his accounts with his ward and cestui que trust should be finally closed at any given time, and no order was made pending the proceeding indicating the intention of the chancellor to so far settle the accounts between the parties as to preclude himself from correcting any errors that might be made. Very little proof was heard, and this was generally the statements of persons, called before the master, and examined at his own discretion. The reports of the appellant were generally accepted as correct, and the settlements made upon the basis of his ex parte statements. The chancellor was asked to keep the cause open. It was so kept, and errors prejudicial to appellee were from time to time corrected.
The advantages secured by going into the chancery court instead of settling with the county judge were that appellee thereby secured not only a permanent and abiding memorial of his action in his fiducial character, but also the supervision *105 and advice of the enlightened judges presiding over that court; further than this, that tribunal has the power, when his relations to Mrs. Clark as guardian and trustee shall cease to exist, to settle and determine finally his accounts, and render a judgment precluding her from asserting further claim against him in any other court, which would not have been the ease had he made ex parte settlements with the county judge.
Clark and wife now ask that this final settlement shall be made, and demand, as they have the right to do, that in making it all the accounts of appellee and all allowances heretofore made to him shall be considered. In short, they ask that the various orders of confirmation and approval shall be treated as interlocutory, and not as final judgments.
Of course, in the revision of these settlements it would be improper to disallow expenditures or investments made by appellee with the approval of the chancellor, or to reject evidences of such expenditures accepted by him at the time as sufficient, unless the expenditures were so extravagant or the investments so ill-advised as to raise the presumption of fraud, or unless the evidences are directly assailed and shown to be false. But as appellee has held and managed the estate of his ward and cestui que trust as his own, investing it, as he saw proper, in stocks, bonds, and other securities, and selling and re-investing at will, and in loaning the moneys at such rates of interest as he could secure, and then in his settlements accounting merely for the estate coming into his hands, regardless of the profits or losses resulting from these investments and loans, he can not complain that inquiry be now made as to whether he has been charged with sufficient interest, and as to whether the amounts allowed him for his services are not more than he was justly entitled to. It may be that appellee would have preferred to hold these various investments for Mrs. Clark, and that on one or two occasions he so reported to the chancellor. His propositions, if made, *106 were not approved, and in no instance insisted on, and he must therefore be treated as a trustee holding and using the trust-estate for his own benefit; and after being paid a reasonable and proper compensation for his services he must account for such interest on the moneys held by him as the equities of the case demand. The three clauses of the will under which Mrs. Clark takes as devisee, and which prescribe the relationship intended to exist between her and the appellee, are as follows, viz.:
“Sixthly — I hereby devise all the rest of my property, both real and personal, to W. Geo. Anderson, in trust for the sole and separate use of my beloved daughter Mary, and, in the event of her marriage, free from any control, interference, or liability of her husband, but giving her the separate control and use of the same as though she was unmarried.
“Seventhly — I hereby nominate and appoint my cousin, W. Geo. Anderson, guardian and trustee for my beloved daughter, Mary Martin, commending her to his fatherly care and protection.
“Eighthly — I hereby nominate, constitute, and appoint W. Geo. Anderson, Patrick Joyes, and Col. C. I. Field as executors of this my last will and testament.”
For the purposes of this litigation appellee may be treated as the only one of the nominated executors who qualified. It is apparent that the testator intended that appellee should act in the twofold character of trustee and guardian. He was not only to hold the title of the estate devised in trust for Mary Martin Anderson, but was to manage and control it as trustee. Giving effect to all the language used by the testator, it seems that it was his intention that as to the estate devised appellee was to be trustee, but as to the person of his daughter he was to be guardian. The two offices are separate and distinct. Appellee might have declined to act as trustee and still have been entitled to the guardianship of the devisee, or he *107 might have declined the guardianship and still have held and controlled her estate as trustee. Such being the case, he must account as trustee, and not according to the statutory provisions applying to guardians.
We see no objection to the action of the chancellor in requiring him to account for interest, compounding at rests two years apart. He was the trustee- of an express trust, charged with the duty, at least during the minority of the beneficiary, of using the money to her advantage. He expected and has been allowed compensation for his services, and if he did not use reasonable diligence in loaning it or otherwise investing the funds in his hands so as to realize profit, it was his own fault. Under the circumstances of this case he must be considered as having loaned the money to himself, and should therefore be charged interest upon interest, compounded at the intervals stated. It is not regarded as unreasonable where the trustee has used the trust-moneys in trade or speculation for his own benefit and advantage to charge him either with the profits actually obtained or with compound interest. (Jones v. Foxall, 13 Eng. Law and Equity, 142.) It is insisted that the rule in the case of Foxall v. Jones does not apply in a case like this, because there the trustee was guilty of a breach of trust. It is true the court attached much importance to the breach of trust; but one of the controlling reasons assigned for compounding the interest was that the trustee had used the trust-estate in carrying on his partnership business, and thereby derived benefit from it. Besides, in England trustees are allowed no compensation for their services, and hence it is that the English courts refuse under ordinary circumstances to charge the trustee with a greater amount of profits than he has actually received. For the same reason a trustee is not by the English rule held answerable for negligence unless it be so gross as to amount to evidence of bad faith or of willful misconduct; but as was well said by Chief Justice Gibson in *108 Ex parte Cassel, “The reason of the rule shows that it is not for cases in which the trustee is to receive a stipulated compensation” (3 Watts, 443); and he treated trustees so compensated as bailees for hire.
Mr. Henry Rawle, upon the authority of this case, in a note to the case of Robinson v. Pett (2 Leading Cases in Equity, part 1, p. 228), says, “The subject, however, of a trustee’s compensation is intimately connected with that of his liability. Where he is treated as a paid agent, and has undertaken the trust as such, it would seem that his accountability should be much greater than where his services have been gratuitously rendered.” This doctrine applies not only to neglect in the preservation of the trust-property, but to want of diligence in managing the, estate so as to realize profit for the beneficiary. It is attempted to show a distinction between the case under consideration and that of Maupin’s ex’r v. Dulaney’s devisees (5 Dana, 594), upon the idea that the will made it the duty of Maupin’s executor to make all moneys productive in his hands, while no such duty is expressly enjoined upon Anderson. But a trustee who claims and receives compensation is bound to use ordinary diligence at least in managing the estate of an infant cestui que trust; and good faith requires that he shall not keep the estate idle when it consists, as did that of Mrs. Clark, of money that might have been loaned out at interest.
Appellee having voluntarily become the paid agent of his ward, and having loaned the trust-funds to himself, we see no reason why he shall not be held to have received the interest, and reloaned it as often as a prudent business man under like circumstances would have done had the estate been his own.
The rule of a trustee’s accountability for interest, as stated in the case of Maupin’s ex’r v. Dulaney’s devisees, is that he is chargeable with the interest actually received, or with such as in the prudent and faithful discharge of .his duties he ought to have received. In that ease interest was compounded at *109 the end of every three years, the court holding the correct doctrine to be that rests should be regulated by the circumstances of each case, and the long interval of three years seems to have been adopted on account of the relief system having prevailed during a portion of the time the trust was being executed. In that case, as in this, the good faith of the fiduciary was undisputed.
Appellee made his first settlement in February, 1859, two years after he undertook the execution of the trust. Settlements were made at intervals of two years up to 1871.
The objection to the manner in which interest was computed against appellee is that, notwithstanding large sums of money came into his hands at the end of each three months, he was allowed to retain them all without interest until the date of the succeeding settlement.
Under the will of John U. Martin, deceased, the trustee was entitled to receive one fifth of the profits accruing on the Martin estate, to be paid quarterly. The right to these profits passed to Mrs. Clark under her father’s will. The payments were regularly made to appellee; and, although in his settlements the sums so received are charged to him as of the respective dates of their reception, he accounts for no interest on them until after his next settlement. The manifest injustice resulting to Mrs. Clark from this mode of keeping the accounts can he seen from an examination of the settlement made in 1861. From February, 1859, up to February, 1860, appellee received of the trust-estate in. the aggregate over twenty-five thousand five hundred dollars, and paid out about four thousand dollars; consequently there remained in his hands during the year preceding his settlement in February, 1861, about twenty-one thousand five hundred dollars of the receipts of 1859 and 1860, upon which no interest whatever was charged against him. The accounts throughout the entire period were kept in the same way, and necessarily with like results.
*110 There is no suggestion in the affidavit of appellee accompanying the settlement of 1863, which covered the years ending February, 1860, 1861,1862, and 1863, of difficulty in keeping the funds invested or loaned out during the years 1859 and 1860. He speaks of the trouble in keeping the means at interest in 1861 and 1862, and says that at all times since February, 1859, he had means on hand uninvested, but assigns no reason except as to the last two years of the period embraced by his report. In no affidavit or statement made by him subsequent to 1865 is there complaint made that he was from any. cause unable to keep the trust-estate at interest. No reasonably prudent man would in ordinarily prosperous times have kept the large sums of money coming to the hands of appellee at the end of each quarter idle during periods ranging from three to twenty-one months, as the master seems to have assumed was done by appellee; and, except in cases in which good and sufficient reasons are given for such unusual conduct, a trustee asking and receiving compensation for his services should be regarded as having' used the trust-funds in his own business, and be required to account for interest upon that hypothesis.
We do not feel authorized to direct that appellee shall be charged with interest prior to his settlement in February, 1859, unless he received interest on the estate held by him up to that time as executor, a fact that does not appear from the record. During the years ending February, 1860, 1861, 1866, 1867, 1868, 1869, 1870, and 1871, his accounts will be settled upon the following basis, viz.: The mode of computing interest on the amount on hand at each settlement up to the next, as heretofore adopted by the master, will be adhered to; then as to the funds coming into his hands during the two years intervening between settlements a balance of receipts and expenditures will be ascertained at the end of each year, and interest charged on such balances up to the succeeding settlement, when the entire sum will be carried into the general *111 fund. This gives an average of six months within which to make investments, which time we regard as ample.
The years ending February, 1862, 1863, 1864, and 1865, are excepted from the rule indicated on account of the derangement of business resulting from the civil war. During those years the mode of stating the accounts adopted by the master will be followed.
It seems to us that appellee can rightfully claim no greater indulgence than this on account of the disorders incident to said war, nor do we see that he is entitled to any special credit because of the preservation of the estate during the time the currency of the country was so greatly depreciated.
If he received depreciated currency and it appreciated on his hands, the increase in value inures to the benefit of Mrs. Clark. If he loaned out the money when greatly depreciated, and collected the amount loaned with interest after legal-tenders had approximated their face value, he can not claim any portion of this appreciation as against his eestui que trust. If he used the money for his own purposes, he thereby made himself the debtor of Mrs. Clark, and he must discharge this debt with lawful money just as he would have been required to do had he borrowed it from a stranger.
Appellee admits that silver plate and other property of the value of two hundred dollars came to his hands as executor. There is evidence conducing to show that he turned this property over to Mrs. Clark, or to the lady with whom she resided for her benefit. He should be allowed, if he desires to do so, to amend his answer in this regard, and his accountability will then be tested by the evidence. We now express no opinion as to the weight of the testimony relating to this matter.
We approve the commissions allowed appellee, except as to the funds received from John L. Martin’s estate. He acted as administrator of that estate, but he should not be allowed double commissions, although he did receive and hold the *112 funds arising from that source in different fiducial capacities. When he settled as administrator of Martin’s estate he was allowed seven and one half per cent commission. The transfer of the funds to himself as trustee of Mrs. Clark involved no additional labor and no additional responsibility, and he at once commenced to use the funds as his own. Under such a state of case it is difficult to perceive a sufficient reason for allowing him two commissions for the performance of a single duty. As appellee is required to account for all the trust-estate, including bonds, stocks, etc., as money, he should be allowed five per cent commission on the bonds and stocks, as well as on the moneys coming to his hands.
Without adjudging whether there was any debt due to the testator from the firm of W. G. & O. M. Anderson, or whether there was a balance of profits standing to his credit as a member of that firm at the time of his death, we think there is no good reason for holding that such debt or balance, if either existed, passed under the devise of the Grahamton property. Upon the contrary, if there was any such debt or balance, it would seem to have passed under the residuary devise to Mrs. Clark, and appellee should be held to account therefor. If appellee desires to have this question tested as to the right of Mrs. Clark to assert this claim against his infant son, he should make that son a party to the litigation.
A further question to be determined is the right of Clark and wife to demand the fund made up of the unexpended incomes which have heretofore accrued from the trust-estate. It was the principal that was devised to appellee to be held in trust for the separate use of Mrs. Clark. The only reason why she has not all the while had the right to receive and dispose of the incomes or profits of the estate was that she was an infant. Her marriage before arriving at age did not remove this disability. Such of the estate as may under the will be *113 subject to her control she takes in her own right as feme sole, free from and independent of her husband. Hence to make an acquittance from her to the trustee good and valid it is necessary that it shall be executed by her after the disability of infancy ceases.
It- follows therefore that the court properly refused to require appellee to pay over to her this accumulation, she being still under age at the time the cause was submitted for judgment. This accumulation, however, has not, by reason of Mrs. Clark’s infancy, become part of the principal of the trust-estate, and she is entitled to receive and dispose of it as she may deem proper so soon as she arrives at the age of twenty-one years. (Hill on Trustees, side page 405.)
The rents and profits derived from the Martin estate up to the time fixed by Martin’s will for the partition and distribution thereof constituted portions of Mrs. Clark’s income, and will be so regarded. We settle these questions because the record shows that Mrs. Clark is no longer an infant, and because they are raised by the pleadings and will necessarily come before the chancellor for adjudication upon the return of the cause.
The court did not err in refusing to remove appellee from the position of trustee. His integrity is unquestioned, and his faithfulness, prudence, and business qualifications are unassailed. He was selected by the testator to execute the trust; and while it is unfortunate for all parties concerned that the mutual confidence and regard that should be entertained for each other by persons occupying the delicate relationship existing between the parties to this litigation is to some extent impaired, neither this fact nor the willingness of another competent person to discharge the duties of trustee without compensation authorizes the chancellor to take the estate out of the hands of the trustee to whom it was committed by the testator.
*114 For the errors as to the manner in which appellee’s accounts have been stated the judgment dismissing appellants’ petition is reversed. The cause is remanded for further proceedings consistent with this opinion.