CHIEF JUSTICE LINDSAY
delivered the opinion oe the court.
1. The fifth clause of the will of O. M. Anderson, dec’d, contains this language: “I hereby give and devise all my right, title, and interest in the Grahampton Cotton Factory and Mills, and in all of the lands, tenements, and property in and about Grahampton, belonging to the firm of W. G. & O. M. Anderson, to my partner and cousin W. Geo. Anderson in trust.” The beneficiary of the trust is the infant son of the trustee.
All the rest of the testator’s property was devised to his daughter Mary Clark.
In the construction of this will in the case of Clark & wife v. Anderson (10 Bush, 112), this court said:
“Without adjudging whether there was any debt due to the testator from the firm of W. G. & O. M. Anderson, or whether there was any balance of profits standing to his credit as a member of that firm at the time of his death, we think there is no good reason for holding that such a debt or balance, if either existed, passed under the devise of the Gra *115 liampton property. Upon the contrary, if there was any such debt or balance, it would seem to have passed Under the residuary devise to Mrs. Clark, and appellee should be held to account for it.”
An examination of the partnership books showed that the firm was indebted to the testator for money deposited, $2,514.92, and that sum was adjudged to Mrs. Clark. The chancellor found there was no balance of profits standing to the credit of O. M. Anderson at the time of his death, and of this Clark and wife complained.
A complete settlement of the partnership affairs develops the fact, that from the inception of the enterprises up to the death of the testator, profits amounting to $33,488.83 had been realized, but they were all invested in machinery and merchandise, except that portion made up of outstanding claims, in the shape of notes, accounts, etc. None of this property passed to Mrs. Clark as residuary devisee. It was included in the lands, tenements, and property in and about Grahampton, belonging to the firm, and was disposed of by the fifth clause of the will. It seems that no dividend had ever been declared, and no steps taken by the firm indicating an intention by the partners to withdraw from the business, for individual purposes, any portion of the profits, and hence there was no “balance of profits standing” to the credit of the testator, and nothing to pass to Mrs. Clark on this account.
The clear meaning of the testator, when he provided that the firm business should still be carried on, and the profits and interest arising from his share appropriated to the enlargement of the business, was that there should be no diminution of the sum invested in the partnership as it then stood, regardless of whether the investment might be in lands, buildings, merchandise, or uncollected debts.
2. In the defense of the action of Duncan v. Field, &c., *116 for the partition and distribution of the estate of John L. Martin, deceased, it seems Anderson and Clark and wife could not agree as to the exact character of the answer to be filed to Duncan’s petition. There is nothing in the record tending to show that this disagreement resulted from bad faith, or mere obstinacy on the part of the trustee. It was his duty, under the will of O. M. Anderson, to make defense, and he had the right to employ counsel, and compensate them out of the trust estate. The trustee and the cestui que trust differed as to their respective rights in the trust property, much of which was made up of the interest of the testator in the Martin estate, and issues as to their rights were raised in the suit of Duncan. We can not say that Anderson acted unreasonably in insisting on being allowed to discharge his duties as trustee, through competent counsel selected by himself; and whilst it may be unfortunate that the parties were not willing to adjourn the settlement of their differences of opinion till the suit instituted by Clark and wife for the correction of the trustee’s settlements could be prepared for trial; yet as the trustee in the employment of Bodley, & Simrall acted within the scope of his authority, and in good faith, the chancellor properly made the allowance in question.
3. It is next objected that Anderson was allowed credit for the fees paid to Bodley & Simrall and Joyce, in defending the action of Clark and wife to have his settlements surcharged and corrected. It is claimed he made defense to this action in his own wrong; and the fact that this court, on the former appeal, directed a re-statement of his accounts, on a basis different from, and in some degree more favorable to, Clark and wife, than that adopted by the chancery court, connected with the further fact that he was required to pay the costs of Clark and wife in this court, is relied on as conclusive of this question. If the appellants had obtained all the relief sought in their action, there would be much force in this assumption; *117 but as they compelled Anderson to defend his right to act as trustee, and to resist their claim to have the accumulations in his hands, amounting to over $100,000, paid to Mrs. Clark, while she was yet under the age of twenty-one years, and not entitled to receive them, and attacked his settlements in many particulars, in which they were unsuccessful, it would be unconscientious to require him to pay these fees out of his own means. In the material and essential questions involved in the litigation, the trustee was successful; and the costs, ordinary and extraordinary, expended in making his successful defense, would have all been taxed against the trust estate, except that the judgment of the chancellor had to be reversed by this court, for the correction of certain errors, to the prejudice of these appellants, upon some of the questions raised by them in their petition.
These errors made it necessary to prosecute the appeal, and the success of the appellants entitled them to recover their ordinary costs; but it did not take from the trustee the right to be compensated out of the trust estate for the extraordinary costs and expenses attending the defense of so much of their action as was not well founded. And when it is considered that the allowance of $4,000 covers and embraces all professional ■ services rendered in both the actions instituted in the chancery court, and in the whole trust matter in all the courts, up to and including the settlements of 1873, 1875, and 1876, it must be regarded as reasonable and proper.
4. It was error to allow the trustee credit for $150, the amount paid the commissioner for the re-statement of his accounts after the return of the cause from this court. The chancery court was then executing the mandate of this court, and this allowance was in the nature of ordinary costs, and must be paid by the party whose default or mistake rendered the services of the commissioner necessary.
5. The chancellor did not err in declining to charge the *118 trustee with the loss resulting from the loan to Ferguson. This investment was secured by a mortgage on real property of cash value fifty per centum greater than the sum loaned. It is true, that value depended greatly on the buildings and improvements, but these were covered by insurance, and, except for the unexpected depreciation in the value of real property, resulting from the financial crisis commencing in the autumn of 1873 — a state of affairs which reasonable prudence and foresight could not guard against — the loss would not have been sustained.
6. But the case is different with regard to the loan to Pearson. The sum originally loaned was $21,000. It was secured by a mortgage on real estate, which the weight of the evidence shows was worth, in 1872, when the investment was made, a sum probably sufficient to warrant the action of the trustee.
In February, 1873, while Mrs. Clark was still an infant, this security was reported to the chancellor for his approval. It was not formally objected to by appellants’ counsel. But on the 22d of September, 1873, four days after Mrs. Clark had become twenty-one years of age, and when she had, under the judgment in the case of Clark v. Anderson, reviewed by this court, and reported in 10 Bush, 112, the right to take control of and enforce the collection of Pearson’s notes, the trustee assumed to release the security taken in 1872, and for a balance of $16,000 remaining unpaid on the loan to accept new notes from Pearson, secured by mortgages on other and different parcels of real estate. When these notes and mortgages were presented to the chancellor, Clark and wife repudiated the action of the trustee, and protested against being compelled to accept them. We see no ground upon which the action of the trustee in releasing the old and accepting the new securities can be justified. The court had in effect ratified and approved the original loan, and when Mrs. Clark reached the age of twenty-one years, and became entitled to demand *119 and receive the accumulations in the trustee’s hands, he might have insisted that she should accept the Pearson note and mortgages as part of her estate. She likewise could demand that her securities should not be changed after her right accrued and the trust terminated; and when the trustee, in disregard of that right, undertook, without authority from Mrs. Clark, to make the change, he assumed all the risk, and as he can not now place his cestui que trust in statu quo by surrendering to her the estate in his hands as it existed when her right to receive it accrued, she may elect either to accept the new securities or demand in money the amount due on the original investment, with legal interest from the time the unauthorized change was made; and as the judgment of the chancellor in effect denies her the right so to elect, it is erroneous.
7. The investment in the second mortgage bonds of the Louisville, Cincinnati & Lexington Railroad Company was properly rejected. In this state trust funds, may be loaned on personal security when it is ample and sufficient (Higgins v. McClure, 7 Bush, 381; Clay v. Clay, 3 Metcalfe, 548), and may be invested in certain public securities (Myers’s Supp. 264; General Statutes, 508), with the sanction of a court of equity; but no judicial precedent or statutory regulation will justify their investment in the stock or bonds of private corporations; and bonds secured by a second mortgage on the road-bed and other property of a railway company are peculiarly objectionable. Aside from the notorious fact that the value of railway bonds is at all times more or less controlled by combinations of speculators and dealers in such securities, they can not, when due and payable, be enforced- without great trouble and expense; and in the case of a second mortgage, the friendly concurrence of the holders of the first mortgage bonds may sometimes be indispensable to make the security available at all.
*120 The fact that the trustee reported the interest received on these bonds as part of the estate of Mrs. Clark, and her failure to object to his action in this regard, do not estop her from objecting to the investment. The trustee is more than compensated for this interest by the failure of the chancellor to compound the interest biennially on the sum invested. The objection was made within one month after Mrs. Clark arrived at age, and as she applied within the time allowed by law the trustee can not object that the order of confirmation entered a few months before was set aside to allow her to exercise her right of election. It may be that except for the sudden depreciation in the value of these securities this objection would never have been insisted on; but when the trustee made the unauthorized investment he assumed the risk and must now sustain the loss.
8. We are of opinion the extra commission of one and a half per cent reported by the commissioner for collections and reinvestments, made in consequence of the passage of the conventional interest act, should have been allowed. The extra service thus rendered was for the benefit of the trust-estate, and as the compensation reported is altogether reasonable the exception to this item should have been overruled.
The judgment rendered in the action instituted by Clark and wife to surcharge and correct the accounts of Anderson is affirmed.
The final judgment rendered in the action instituted by Anderson against his ward .and cestui que trust, in which his accounts were settled, is reversed on the original and also on the cross-appeal.
The costs of this last-named action will be taxed one half against either party.