Wiseman, J,
It will be necessary to review briefly the history of this case in order that the issues herein may be clearly understood.
In 1925 one George W. Tischer died leaving a will in which he established a trust in favor of Hazel Tischer, a minor. The Dayton Savings & Trust Company was originally appointed trustee. Through a merger with the *282 City National Bank, the Union Trust Company, the new organization, was named as successor trustee. In August 1931 Hazel Tischer became of age and the fourth and final account of said trusteeship was filed in September of that year. Exceptions were filed to the fourth and final account, and to all previous accounts, by Hazel Tischer, in which she alleged that during the administration of said trust the trustee had violated the terms of the will in' making investments of the fund in Joint Stock Land Bank bonds. The will provided that the trustee should invest said fund in safe securities of its own choosing by and with the approval of the Probate Court of Montgomery county, Ohio, and the executors * * *. The facts show that the trustees converted Liberty bonds and invested the proceeds thereof in Joint Stock Land Bank bonds without first obtaining the approval of the Probate Court or the executors.
Upon the filing of the fourth and final account by the trustee and the tendering of said bonds, which had greatly depreciated on the market, Hazel Tischer refused to accept the same and contended that inasmuch as the trustee had violated the terms of the will in reference to investments, she should receive the original amount of the fund in the trust.
The facts further show that the trustee in filing his intermediary accounts disclosed in the accounts the nature of the securities held and the income derived therefrom. These accounts were formally approved by the Probate Court, no question being raised with reference to the investments.
At the hearing in the Probate Court the trustee was represented by Burkhart, Heald and Pickrel, which firm of attorneys .gave advice to the trustee in the preparation of the account, and also prepared and filed said account for trustee, prepared the case on exceptions and represented the trustee in court in the hearing. The Probate Court decided that the trustee had violated the terms of the will and that the ward should be entitled to the principal sum of said fund. From the judgment of the Probate Court the trustee took appeal to the Common Pleas Court, which reversed the judgment of the Probate Court and *283 held that inasmuch as the Probate Court had from time to time approved the accounts filed by the trustee, which accounts set forth the nature of the investments, and that inasmuch as no objections had been interposed, the approval of the accounts by the Probate Court in fact was tantamount to an approval of the investment itself.
The case was carried to the Court of Appeals which court sustained the judgment of the Common Pleas Court.
• In the preparation of the appeal from the Probate Court to the Common Pleas Court, the hearing in the Common Pleas Court, the preparation of briefs in the matter, the hearing in the Court of Appeals and the preparation of briefs in that court, and, in fact, all of the legal services rendered to the trustee after the hearing in the Probate Court were rendered by Messrs. Hubert A. Estabrook, Daniel W. Iddings and Sidney G.' Kusworm who were designated by the attorney general of Ohio as special counsel in connection with the liquidation of the Union Trust Company, the trustee herein, which closed its doors on October 31, 1931, and which from that date was operated under the supervision of the state banking department.
The Union Trust Company acting through Ira J. Fulton, superintendent of banks of the state of Ohio, desiring to terminate said trust asks the judgment of the Probate Court with reference to compensating the attorneys who have rendered service in this matter. Applications have been filed for the payment of compensation to the firm of Heald, Zimmerman, Clark and Machle, which has succeeded the firm of Burkhart, Heald and Pickrel, insofar as receiving compensation for legal services rendered in this matter. An application has also been filed to compensate Messrs. Estabrook, Iddings and Kusworm, special counsel designated by the attorney general in representing the superintendent of banks in the liquidation of the trust company, for services which they have rendered in this matter.
It is a well-settled principle of law that the trustee in the first instance is personally bound to its counsel for all services rendered to it' in matters involving the trust. The trustee will be privileged to take credit in its account for compensation for all counsel fees paid by it, which in *284 the judgment of the Probate Court are reasonable and just.. The trustee in this matter desires the judgment of the Probate Court in these matters so that it may properly file its final account and take credit for such counsel fees as the court will allow.
These facts present a case which might be divided into three phases, first, the services which were rendered by counsel to the trustee in advising and in preparing and in filing the fourth and final account for which compensation is asked, and, second, services rendered by counsel for the trustee in preparing for the hearing, and in the actual trial of the exceptions to the fourth and final account in the Probate Court, for which compensation is asked, and, third, services rendered by special counsel designated by the attorney general in the appeal to the Common Pleas Court in conducting the matter in the Common Pleas Court; in taking the matter to the Court of Appeals and in conducting said matter in the Court of Appeals for which compensation is asked.
Unquestionably counsel who advised and prepared the fourth and final account for the trustee have rendered service to the trustee for the benefit of the trust, and in furtherance of the proper administration of said trust, for which they should be paid a reasonable fee and the trustee would be entitled to take credit therefor in its fourth and final account.
In considering the nature of this case, the issues involved together with the nature of the investments and the amount of said fund, the court is of the opinion that the trustee should be allowed to take credit in its account for a counsel fee for rendering this service, in the amount of Fifty ($50.00) Dollars, which the court believes to be reasonable.
The trustee also asked the court for its judgment in compensating the same counsel for preparing for the hearing in the Probate Court and the actual trial of this case on exceptions in the Probate Court. This phase of the case-presents a very difficult problem for the court to decide. Upon investigating the law in this case both counsel and the court are of the opinion that the law in Ohio and elsewhere-bearing'üpon this subject is very unsettled.
*285 Counsel for the trustee contends that in rendering service in this phase of the case it was doing so in furtherance of the administration of the trust and that the trustee should be privileged to retain counsel in defending its own conduct and its own administration and therefore should have the right to take credit in its account for a reasonable counsel fee for such services.
Counsel for the cestui que trust, Hazel T’ischer, contends that the services which counsel rendered in the preparation for and in the trial of the exceptions in the Probate Court were not rendered for the benefit of the trustee, acting in a fiduciary capacity, but were rendered for the benefit of the trust company and therefore the trustee should not be privileged to compensate counsel therein out of the trust funds.
Counsel for the cestui que trust contends that inasmuch as the trustee in personally liable in the first instance, its personal liability for legal services can not be transferred to the trust estate unless some specific authorization is shown in the will, or unless it appear that the services were rendered in carrying out the directions of the trust, or were reasonably necessary for the preservation of the trust, or to prevent a failure of the trust. It is further contended that the services rendered in this case were not rendered for the purpose of protecting or conserving the trust fund, but rather in the interest of the trust company in defending its conduct and in relieving it from any corporate responsibility for the wrongful investment of trust funds.
It is true that the Probate Court found that the trustee had not complied with the terms of the will in the investment of trust funds, and that the trustee should .be liable for the original amount of said fund, which would have fixed a corporate responsibility upon the trust company for the difference between the .original amount of the fund and the amount as tendered, but the court can not at this time consider the judgment of the Probate Court for the reason that the settled law in this case has been declared by the Court of Appeals in which the position of the trust company was sustained. The Court of Appeals found that the trust company was not guilty of *286 any misconduct and therefore was relieved of any corporate responsibility in the matter to the cestui que trust. This litigation was finally terminated in favor of the trustee and against the position of the cestui que trust. Regardless of what this court may think about the law, which should have governed the court in its final determination of the issues in this case, this court is now bound by the judgment of the Court of Appeals which found the acts of thé trustee to have been valid.
The question for the court to determine therefore is whether or not the trustee, in retaining counsel to defend its conduct in the administration of the trust against the attack made upon it by the cestui que trust, in which case the position of the trustee is sustained and the contention made by the cestui que trust is found to be unfounded, can compensate counsel for such services and charge the payment thereof against the trust fund.
In support of the proposition that counsel fees can not be taken from the trust fund in such instance, counsel has cited to the court the case of Buschle v. Buschle Manufacturing Co., 15 N. P. (N. S.) 618 (1913) in which the court held:
“Fees will not be allowed to plaintiff’s counsel out of a fund in the possession of the court unless plaintiff or his counsel have rendered services the effect of which is to conserve or add to such fund. Where plaintiff himself has participated in acts which have diminished that fund no fee will be allowed his counsel therefrom.”
This opinion was rendered by Judge Oppenheimer of the Superior Court of Cincinnati. A close study of that case, however, reveals the fact that the plaintiff in that case had petitioned the court for the appointment of a receiver of the Buschle Manufacturing Company, in which he was unsuccessful. However, at the conclusion of the hearing all the parties involved mutually agreed that the court should appoint a receiver for the purpose of conserving the assets. Thereupon, the plaintiff who was unsuccessful in his litigation, asked the court to allow out of the funds a reasonable counsel fee for services rendered to him in the prosecution of the unsuccessful piece of litigation. The syllabus of this case, which has been *287 quoted herein, must be limited to the facts in the case. This court is of the opinion that the law announced in the Buschle case has no application to the facts in the case at bar.
Pomeroy on Equity, Section 1085, is also cited for the proposition that no fees should be allowed under the facts in this case, quoting as follows: . .
“In addition to his compensation' in this country, and without any compensation in England, the trustee is entitled to be allowed, as against the estate and the beneficiary, for all proper expenses out of pocket, which include all payments expressly authorized by the instrument of trust, all reasonable expenses in carrying out the directions of the trust and, in the absence of any such directions, all expenses reasonably necessary for, the security, protection and preservation of the trust property, or for the prevention of a failure of the trust.”
Pomeroy has stated in clear and concise language the general principle of law which controls in these matters, but in the investigation of decisions rendered by the courts of various states, the court must come to the conclusion that Pomeroy did not choose language sufficiently comprehensive to embrace all of the law on the subject.
The courts of Ohio and all other states, have allowed counsel fees to be taken from the trust fund when the services were rendered to the trustee in defense of an attack made by the cestui que trust, in which the position of the trustee was finally sustained. This matter has been well considered by the Superior Court of Cincinnati in a decision rendered by Judge Foraker, in the case of Mitchell and Lape v. Schultz et al, 8 Ohio Decisions Reprint 78. A part of the syllabus of this case reads as follows:
“Trustees will be allowed to , reimburse themselves, out of the trust funds, for all reasonable expenses incurred by them in the defense of suits brought without cause to annul and set aside transactions had by them, in their trust character, concerning their trust.
“And this will be so, notwithstanding their own personal characters for competency and honesty, as trustees, may be involved in the controversy.
*288 “Nor will it alter the rule if the transactions in question have resulted in their private gain and advantage, provided the transactions were valid and proper for them to engage in, as trustees.”
The court believes that it is justified in quoting various parts of the opinion in which are set forth the contentions made by,counsel in that case, which are similar to those made by counsel in the case at bar. Excerpts taken from the opinion are as follows:
“It is claimed on behalf of the trustees that this was a suit against them as trustees, and that their defense was in their trust capacity, and for the benefit of the trust estate, and hence that they are clearly entitled to the indemnity asked.
“On the other hand, it is contended that the case was practically, and in effect, a suit against Mitchell in his individual capacity,, to recover from him, for the benefit of the estate, the property and effects which he had irregularly and illegally possessed himself of, and hence that he was defending only in his own right, and consequently that his defense should be at his own expense.”
Further on in its opinion, on page 79, the court say:
“For the question was not alone whether or not there had been a faithful and competent administration of the trust, but it was also whether or not the large and profitable purchase of the business by Mitchell was a valid one.
“The case was one, therefore, in which the trustees were sued in their trust character, and in which was assailed the administration by them of their trust, and in which all they ha$ so done presumably for the benefit of the trust, according to their judgment, was to be undone.
“Looking at the case to this extent alone, it would seem-beyond argument the privilege and the duty of the trustees to defend as such, and at the expense of the trust if the charges brought should fail.”
The court states on page 80 that it makes no difference whether the character of the trustees for fidelity and competency was involved. But that it does make a difference whether the personal and private interest of the trustees were involved in the transactions. The court went on to state that such transactions are usually set aside on the ground of misconduct and maladministration, and that the *289 expenses incurred in an effort to sustain the acts of the trustees in such matters are usually denied. However, the court in its opinion stated that in its judgment the case was taken out of the general rule for the reason that the litigation was terminated finally in favor of the trustee. The court quotes from the opinion as follows:
“And yet, notwithstanding all this, his transactions have been upheld and confirmed by the courts. The litigation that put them to the test has been decided in his favor; and on the ground that he had acted in such good faith, and with such fidelity to his trust obligations as that equity required that they should be upheld. In other words, stating it more plainly, the result is that he had a right to do what he did do. However much this may be at variance with our individual notions and opinions of the law, or rather what the law should be, governing such a case, the fact remains that such is the conclusively settled law of this particular case.
“And by this fact the question now before this court is made to appear to my mind in a very simple and plain form — for it amounts to only this: Shall a trustee be allowed for expenses incurred by him in good faith, in defending that which, in the due administration of his trust, he had a right to do, notwithstanding the fact that he derived a benefit from doing it.
“But one answer can be given: if he had a right to do it, nobody had a right to call him to account for it. And this is true, no matter whether he has been benefited or not, since if he had a right to do it, he had a right to do it for the express purpose^ of benefiting himself. The question must therefore begin and end with the legality or validity of the transaction to be enquired into. If that be in the trustee’s favor, he must be allowed to defend it in the name of, and at the expense of, the trust.
“For these reasons the trustees will be allowed the expenses of their counsel fees in the suit above mentioned.”
While this decision was rendered by a judge of one of the lower courts, yet it is a well known fact that the judges who sat upon that court were some of the ablest jurists our country has produced.
This court believes that this is about the only decision in the state of Ohio, considering the facts in the case and the declaration of law, that is applicable to the facts and issues in the case at bar. This court can reason in like *290 manner, as did Judge Foraker, that regardless of what this court believes the Court of Appeals should have done in the matter in terminating the litigation, nevertheless the court is bound by its judgment in which it has absolved the trustee of all blame; it has terminated the litigation in the trustee’s favor, and that the trustee should be allowed expenses incurred by it in good faith in defending .that which in the due administration of its trust it did do, even though it invited the litigation.
In the Schultz case the acts of the trustee were found to be irregular and without any question the trustee benefited privately by its own transactions, and in that instance invited the litigation which was finally terminated in favor of the trustee.
This court has investigated the decisions of the courts of other states in order that it may better lay down the principle of law which should govern the allowance of counsel fees to trustees in defending their acts in litigation brought by the cestui que trust. This court has been unable to find a clear declaration of law on .this particular subject. The courts have held in various jurisdictions that fees should be allowed, but have failed to draw the line of demarcation between cases in which fees should be allowed and in which fees should not be allowed. In the investigation of these decisions this court is of the opinion that the best test to apply is whether or not the litigation which necessitated the employment of counsel on the part of the trustee was terminated in favor of the trustee, or against the trustee.
In the case at bar if the Court of 'Appeals, or at least the court of last resort, decided the issues against the trustee and found the trustee to have been guilty of misconduct and maladministration, the court in the exercise of its discretion would have been justified in denying the payment of counsel fees out of the trust fund in defending the trustee in this unsuccessful piece of litigation. Most courts have held that the trustee must defend its own wrongful acts at its own expense; especially is this true, if bad faith be shown. As in the case at bar, the litigation being terminated in favor of the trustee, most courts hold that the trustee is given the privilege of defending a *291 successful piece of litigation at the expense of the trust.
The cestui que trust in assailing the trustee in its administration of the trust must also count the cost at the time she starts a piece of litigation. The cestui que trust must know that if the litigation which she starts is terminated unfavorably to her, that the fund in which she is interested must bear the expense of such litigation. Any other principle of law would invite beneficiaries of trusts to bring vexatious and unfounded suits and claims against trustees, for the reason that they would have nothing to lose, and everything to gain, if the trustee, even though it were successful in the litigation would be obliged to pay his expenses out of his own pocket. The placing of the burden of defending an unfounded suit brought by the cestui que trust against the trustee, upon the trust fund, will have the wholesome effect of discouraging the bringing of such suits on the part of the cestui que trust.
The court wishes to cite a number of decisions from the courts of other states. Perhaps the leading case on the subject is that of Jacobs v. Jacobs, 99 Mo., page 427. The court on page 436 say:
“The attorneys fees paid by the executrix, and allowed by the Probate Court for legal services, rendered in the settlement of the Caulfield note, are not unreasonable, and was a proper charge against the estate. Nor do we find any error in the allowance made by the Circuit Court to the executrix for attorneys fees in defending her final settlement in the Probate and Circuit Court. Such allowance is for legal advice and service, such as is contemplated in the statute. R. S. 1879, Sec. 229. If executors and administrators (of estates who have faithfully discharged their duties, and, in the main, rendered a true account of their trust, are to be required at their own individual cost to defend their settlements, in protracted and expensive litigation, from every attack that may be made upon them, few responsible and competent persons will be found to take charge of estates for the modest compensation the law allows for the service.”
Also the case of Clark and wife v. Anderson, 13 Bush (Ky.) 111 (1877). The third syllabus reads as follows:
“Trustee is allowed fees paid by him to counsel to defend the suit brought against him by his cestui que trust *292 to have the settlement surcharged and corrected — attacking his settlements in many particulars unsuccessfully, but to some extent successfully.”
In the court’s opinion it is stated that the trustee had made a number of errors which should be corrected. In order to have these corrected an appeal was taken to the upper court, wherein the contention of the appellant was sustained. In commenting on this phase of the case the court on page 117 say:
“These errors made it necessary to prosecute the appeal, and the success of the appellants entitled them to recover their ordinary costs; but it did not take from the trustee the right to be compensated out of the trust estate for the extraordinary costs and expenses attending the defense of so much of their action as was not well founded.”
It will be observed that the Kentucky court even permitted the trustee to compensate counsel out of the trust funds in defending his conduct, even though to some extent he was unsuccessful in the action. The court made an equitable division of the fees and charged against the trust estate such portion of the fees as were rendered in favor of the trustee in the defense of his actions which were terminated in favor of the trustee.
Also the case of Thome v. Allen, 70 S. W., 410 (1902) decided by the Court of Appeals of Kentucky in which one of several wards prosecuted an unsuccessful piece of litigation against the trustee. The court held that his estate was bound to pay his proportionate share of reasonable attorneys’ fees for the trustee, in resisting the litigation.
This principle of law was also laid down in the case of Saffold v. Stevens, 13 S. W. Second Series, page 268 (1929) which case was decided by the Court of Appeals of Kentucky.
In the case In Re Estate of Meeker, 45 Mo. Appeals, 186, (1891) it was held that:
“The final settlement of an administrator was contested. Some of the objections thereto were sustained and others were disallowed. Held that the administrator was entitled to have a reasonable allowance or credit for attorneys fees for the defense of his final settlement.”
*293 The same court in the case of Lycan v. Miller, 56 Mo. Appeals 79 (1894) held:
“The beneficiary of a trust instituted two actions against the trustees, the first being for trust funds and the second for the removal of the trustees for improper conduct. Both actions were unfounded. Held, that the trustees were entitled to credits in their accounts for reasonable counsel fees expended by them in defense of these actions.”
The Supreme Court of the State of Illinois in the case of Patterson v. Trust Company, 122 N. E. 55 (1919) held that:
“When a beneficiary brings a groundless suit against his trustees the solicitors fees and expenses of the trustee in defense thereof are to be paid out of the complainant's share in the trust estate and not charged against the estate generally, nor a general fund upon which the co-beneficiaries would have to contribute.”
The Court of Appeals of the state of New York in the' case of Ellis v. Kelsey, 150 N. E. 148 (1925) held that:
“In an action to be adjudicated an heir of decedent legatee under a will where plaintiff charged executor and trustee with bad faith in the administration of the estate they were justified under facts in employing counsel, to protect their interests and entitled to compensation for counsel fees.”
Again we cite a case decided by the Supreme Court of the state of Missouri which followed the case of Jacobs V. Jacobs. The case cited is Loud v. St. Louis Union Trust Company, 281 S. W. 744 (1926).
In conclusion this court is of the opinion that the principle of law involved in this case is as well stated in 29 Cyc., page 339, as has been found anywhere in the law:
“A rule which has been applied in a great variety of eases affecting the administration and execution of trusts is that a trustee has a right, whenever necessary to the proper administration, preservation, and execution of the trust and the prosecution or defense of actions, to employ counsel and to be, reimbursed from the trust estate for whatever sums he has paid for the services of *294 such counsel. The rule is applicable even though the cestui que trust employed counsel to represent the same interests, and although, to a certain extent, the private and personal interests of the trustee may also be involved in the litigation.”
The court therefore holds that the Union Trust Company, acting as trustee, may take credit for a reasonable compensation to be paid to its attorney in preparing for and in the trial of the exceptions to the fourth and final account in the Probate Court. The court has heard testimony with reference to the time expended by counsel in the preparation for the hearing, and has personal knowledge with reference to the services of counsel at the time of the hearing, and believes that $200.00 would be reasonable, compensation for counsel in such matter. The court will therefore allow the trustee to take .credit for such amount in its final account.
The court coming on to consider the third phase of this case, to-wit: whether Messrs. Estabrook, Iddings and Kusworm shall receive compensation for their services out of the trust fund, the facts show that after the exceptions to the fourth and final account were heard in the Probate Court, and before the court announced its opinion, the Union Trust Company went into liquidation. Under the law the conduct of the business was placed in the hands of I. J. Fulton, Superintendent of Banks of the State of Ohio.
The Attorney General of the State of Ohio, by virtue.of his authority under the law, designated Messrs. Estabrook, Iddings and Kusworm as special counsel to assist the State Banking Department in matters pertaining to the liquidation of the Union Trust Company. Thereafter, Mr. Estabrook and the firm of which he is a member, to-wit: Estabrook, Finn and McKee, rendered all the legal services to the trustee, in taking the case to the Court of Common Pleas and also to the Court of Appeals. The trustee -asks the instructions of the court as to whether or not for., such legal services counsel shall be paid out of the trust fund: '■
The legal advisor of the Superintendént of Banks is the Atttorney General of the State of Ohio. By reason -of'the great number of bank liquidations in the state, it became *295 necessary for the Attorney General to designate, under the law, special counsel to act in local communities in the liquidation of banking institutions. The facts in this case show that Messrs. Estabrook, Iddings and Kusworm in this matter were acting by virtue of their appointment as special counsel by the Attorney General, for and on behalf of the.State of Ohio, in effecting the orderly, just and legal liquidation of the Union Trust Company. This fact is proven both by written documents and oral evidence. The record • in this case does not show that at any time the trustee, in its fiduciary capacity, employed Messrs. Estabrook, Iddings and Kusworm to litigate this matter.
After these three attorneys were appointed by the Attorney General, as.special counsel, an allocation of the work at the bank was made and this particular piece'of litigation was referred to Mr. Estabrook and his firm for attention. The bank, as stated, had no part in the selection of counsel and by virtue of the authority granted under the law to the Superintendent of Banks, and the fact that it was placed under his care on Ocober 31, 1931, the Union Trust Company, as trustee, could not have employed counsel if it chose to do so.
The correspondence which passed between the Attorney General and special counsel who were designated, states very clearly by what authority they were appointed and on whose behalf they were acting. Their services were rendered in the interest of the depositors, inasmuch as a personal liability against the Union Trust Company would have diminished the fund which will eventually go to the depositors of the bank.
The state legislature in its wisdom, recognizing the fact that the Superintendent of Banks in the orderly administration of the banking department, and in effecting liquidation of a bank, would require the assistance of attorneys, passed Section 710-97, General Code, which reads as follows:
“The expenses incurred by the superintendent of banks in the liquidation of any bank in accordance with the provisions of this act (Sections 710-1 to 710-189, General Code), shall include the expenses of deputies or assistants, clerks and examiners employed in such liquidation, to *296 gether with reasonable attorney fees for counsel employed by said superintendent of banks in the course of such liquidation. Such compensation of counsel, deputies, assistants, clerks and examiners in the liquidation of any such bank, and all expenses of supervision and liquidation shall be fixed by the superintendent of banks, subject to the approval of the Common Pleas Court of the county in which the office of such bank was located, on notice to such bank. The expense of such liquidation shall be paid out of the property of such bank in the hands of said superintendent of banks, and such expenses shall be a valid charge against the property in the hands of said superintendent of banks and shall be paid first in the order of priority; provided, however, that no such expense shall be paid out of the property of such bank until an account of such expense shall have been filed with and approved by the Common Pleas Court of the county in which such bank is located, and the superintendent of banks shall give notice, by publication of the application for the approval of such expense account, in a newspaper of general circulation in the community in which such bank is located at least ten days before such court shall pass upon such application.”
The state legislature therefore has afforded a remedy and has provided the manner in which compensation shall be allowed to counsel who rendered service in the liquidation of a bank such as the Union Trust Company.
Clearly, the Attorney General of the state of Ohio could not lay claim to compensation out of the trust fund for services rendered in defending the trust company in the Tischer litigation, and by the same token Messrs. Estabrook, Iddings and Kusworm, who were designated as special counsel by the Attorney General to act for him in this community in the liquidation of the Union Trust Company, can not claim compensation out of the trust fund for services rendered in this matter.
The court therefore holds that the trustee will not be allowed to take credit in its account for any compensation sought by Messrs. Estabrook, Iddings and Kusworm for services rendered in the Tischer litigation. Their remedy is outlined in Section 710-97, General Code.
Counsel will draw the proper entry.